John **WELZ**

v.

Nicholas **DEGREGORIO, Deputy Warden of Security.**

Civ. A. No. 86–4617.

United States District Court,
E.D. Pennsylvania.

Oct. 27, 1986.

*International,* 632 F.Supp. 244, 250–254 (S.D.N.Y.1986); *Torwest DBC v. Dick,* 628 F.Supp. 163, 167 (D.Colo.1986).

 

John Welz, pro se.

Matthew S. Donaldson, Jr., Media, Pa., for defendant.

## MEMORANDUM AND ORDER

KATZ, District Judge.

Plaintiff, a nineteen year old inmate at Delaware County Prison, *pro se*, seeks a temporary restraining order preventing the deputy warden for security from barring his visits with a friend who had resigned as a correctional officer at that institution. This friend was under investigation for prohibited "fraternizing" with plaintiff at the time she resigned. Plaintiff claims that he needs his friend's help to interview witnesses in aid of his appeal from convictions for first degree murder and burglary. The warden's affidavit claims that the practice of prohibiting former correctional officers from returning to visit inmates at the prison is necessary for security.

Under *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), prison administrators are afforded wide-ranging deference in adopting and executing the policies and practices that in their judgment are necessary to preserve order, discipline and security. *Id.* at 547, 99 S.Ct. at 1878. So long as alternative channels of communication by mail or through attorneys are open to prison inmates, other restrictions on inmates visitors can be justified by security and other considerations. *Ramos v. Lamm*, 639 F.2d 559, 580–81 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1980).

Plaintiff has a court appointed attorney representing him in his appeal. He claims his present attorney is the former partner of his trial attorney and thus has a conflict of interest in developing facts which would show the ineffective assistance of counsel at trial. Plaintiff does not trust his lawyer's efforts. He also claims his mail and telephone communications are not "private." He is willing to accept "screen visits."

The warden explains the security consideration as follows:

"In my opinion as a corrections professional, the practice of prohibiting former employees from returning to the Prison, in particular for contact visits, is sound and is justified for the following reasons of security: (1) Although the practice of contact visitation is generally salutory and beneficial to inmates' morale, it also increases the exposure of the Prison to the introduction of contraband and other breaches of security. Accordingly, because the former employee is fully aware of any and all security precautions in place during contact visitations, that person is also aware of any flaws in the system. Because it is no secret that contraband enters the Prison through correctional employees, by prohibiting the return of former employees to the premises, the risk that these employees will use contact visitation to take advantage of their knowledge of Prison security is eliminated; (2) because the former employee has previously worked at the Prison and has established certain relationships with correctional officers at the Prison, prohibiting the return of former employees also eliminates the risk that past and present employees can cooperate to circumvent the security system during contact visitation; (3) because of space requirements contact visitations are held in the Chow Hall. At any one time, there are generally 40—50 inmates, as well as visitors and guards, present. Because it is practically impossible to determine the type of relationship—good or bad, violent or non-violent—that the former employee had with inmates still in the Prison, it is impossible to determine the effect of permitting the former employee into the Prison in close contact with these inmates. Prohibiting the return of former employees, again, eliminates the risk that problems will be cre-

ated by unknown "bad blood", and (4) the practice discourages correctional employees from developing relationships with inmates."

Plaintiff's likelihood of success on the merits is too slim on the present record under the applicable standard of deference to prison policies on security to justify the relief he seeks, considering the harm to plaintiff's interests and the defendant's as well as the public's interests in prison security.

However, I will allow the facts to be more fully developed through discovery. For example, defendant may depose plaintiff, his friend and his attorney to determine whether plaintiff's friend can work on his behalf under his attorney's guidance and whether plaintiff's distrust of his attorney's efforts has any basis in fact. If, in fact, plaintiff is not receiving the effective assistance of counsel and is being cut off from communicating with his only friend in the world, I may change my mind. I will also allow the record to be developed as to whether plaintiff is able to communicate privately with his friend by mail or telephone and as to the practicability of "screen visits."

### ORDER

On this 27th day of October, 1986, it is hereby ORDERED as follows:

1. Plaintiff's request for a temporary restraining order is DENIED.

2. Discovery shall be completed by December 24, 1986. Any amendments to the pleadings, joinder of additional parties or motions shall be undertaken and concluded, so as not to delay the completion of discovery by the specified date.

3. Plaintiff's pretrial memorandum under Local Rule 21(c) shall be filed within ten days of the end of the discovery period.

4. Defendants' pretrial memoranda under Local Rule 21(c) shall be filed within ten days after plaintiff's memorandum is due.

5. The case shall be placed in the trial pool on January 17, 1986, to be called for trial upon 24 hours telephone notice.