UNITED STATES of America, Appellee,

v.

Martha Cecilia BERNAL–ROJAS,
Defendant, Appellant.

No. 90–1762.

United States Court of Appeals,
First Circuit.

Heard March 5, 1991.

Decided May 17, 1991.

Rafael F. Castro Lang, for defendant, appellant.

Antonio R. Bazán, Asst. U.S. Atty., with whom Daniel F. López Romo, U.S. Atty., was on brief for appellee.

Before TORRUELLA and SELYA, Circuit Judges, and BOYLE,* District Judge.

* Of the District of Rhode Island, sitting by desig-    nation.

TORRUELLA, Circuit Judge.

Martha Cecilia Bernal–Rojas, a citizen of Colombia, was convicted of possessing cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), and of possessing cocaine on board an aircraft arriving in the customs territory of the United States, in violation of 21 U.S.C. § 955. She was acquitted of a third count, that of importing cocaine into the customs territory of the United States, 21 U.S.C. § 952(a).[1] She appeals her conviction and her sentence, raising four issues: (1) whether the sentencing guidelines were applied in a manner that discriminated against her as a Colombian national; (2) whether the jury verdicts were inconsistent; (3) whether the facts comported with the statutory elements of the charge of possession on board an aircraft; and (4) whether her presence in the United States was voluntary. We find that none of appellant's contentions possess merit, and we affirm the judgment of the court below.

## I.

Bernal–Rojas was travelling with a companion from Bogotá, Colombia to Brussels, Belgium. They originally purchased tickets on an Avianca Airlines flight with stops in Venezuela and Madrid, Spain, en route to Brussels. Upon arrival at the Bogotá airport, however, the travellers learned that the Avianca flight had been cancelled. The airline transferred them to an Iberia Airlines flight which was scheduled to make a brief stop in Puerto Rico. Bernal–Rojas and her companion boarded that Iberia flight.

While the aircraft was stopped in Puerto Rico, customs agents interviewed Bernal–Rojas and then made a routine search of her baggage and that of her companion. The search revealed six bottles of shampoo with a suspicious appearance, three in appellant's bag and three in her companion's. A field test indicated that the bottles reacted positively for the presence of cocaine; later lab tests confirmed that result and

also placed the total weight of the cocaine at 3,300.4 grams.

Both Bernal–Rojas and her companion stood trial. Bernal–Rojas testified in her own defense that a Colombian woman had given her the shampoo to take to friends in Brussels, where shampoo was allegedly very expensive. She also testified that she was the mother of three children and was at the time of trial expecting her fourth child shortly. Unpersuaded or unmoved by appellant's story, the jury reached a guilty verdict on two of the three counts of indictment. The travelling companion was acquitted.

At sentencing, defense counsel raised for the first time the issue of discriminatory treatment in the sentencing process. Appellant alleged at the sentencing hearing that because of her nationality she was denied the opportunity to reach a plea agreement whereas citizens of other countries were afforded plea bargains more liberally. In support of her theory, appellant offered an example of a Spanish national, also pregnant at the time of the offense, who had been caught with more than 6,000 grams of cocaine on board an aircraft making an in-transit stop in Puerto Rico. The United States Attorney's office in that case entered into a plea agreement whereby the 6,000 gram indictment was dismissed and the Spanish national pled guilty to possession of 7 grams found in her personal handbag. In contrast, Bernal–Rojas claimed that the prosecutor had refused her offer to name her Colombian drug source in exchange for favorable treatment.

The sentencing judge concluded that he was constrained to sentence appellant in accordance with the counts on which she was charged and convicted, and he proceeded to impose a sentence within the guidelines. The range for the adjusted offense level was from 51 to 63 months of imprisonment; a sentence of 60 months (the statutory minimum for the offense) was imposed.

---

**1.** All three counts of the indictment were premised on aiding and abetting liability under 18

U.S.C. § 2.

## II.

### A.

Appellant characterizes her first ground of appeal as a fifth amendment equal protection challenge to the application of the sentencing guidelines. This description of the question is inaccurate, as no issue is taken with the actual application of the guidelines in this case nor with the imposition of a sentence within the guidelines range. Rather, we would describe it as a challenge to the allegedly discriminatory exercise of prosecutorial discretion in the plea agreement process. The essence of appellant's argument is that because of her nationality, she was denied the opportunity to bargain down her charges and therefore was exposed to a much greater penalty for her conduct than would have been the case were she not Colombian.

■ We assume for purposes of discussion that, were a criminal defendant to put forth evidence that a United States Attorney systematically refused to plea bargain with Colombian nationals, yet regularly reached agreements with otherwise similarly situated defendants, a prima facie equal protection claim would be made out. Although prosecutorial discretion is shielded from intense judicial review, *McKlesky v. Kemp*, 481 U.S. 279, 296–97, 107 S.Ct. 1756, 1769, 95 L.Ed.2d 262 (1987), it cannot be wielded in a manner which discriminates against a constitutionally protected class. *Id.* at 309 n. 30, 107 S.Ct. at 1776 n. 30; *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962). We also assume, for present purposes only, that citizens of Colombia constitute a suspect class, triggering strict scrutiny rather than mere rational basis review. *See Dickerson v. Latessa*, 872 F.2d 1116, 1119 (1st Cir. 1989) (setting forth equal protection standards of review). National origin has been termed a suspect class. *See Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 n. 4, 96 S.Ct. 2562, 2566 n. 4, 49 L.Ed.2d 520 (1976) (characterizing ancestry as a suspect class); *Hernández v. Texas*, 347 U.S. 475, 478–79, 74 S.Ct. 667, 670–71, 98 L.Ed. 866 (1954) (ancestry and national origin are classifications protected by the fourteenth amendment); *Oyama v. California*, 332 U.S. 633, 640, 68 S.Ct. 269, 272, 92 L.Ed. 249 (1948) (forbidding discrimination based upon parents' country of origin); *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 (1886) (Constitution protects "without regard to any differences of race, of color, or of nationality"); *see also United States v. Cammisano*, 413 F.Supp. 886, 891 n. 5 (W.D.Mo.), *vacated on other grounds*, 546 F.2d 238 (8th Cir.1976). Finally, it is evident that the plea agreement process must comport with constitutional standards. *United States v. Bell*, 506 F.2d 207, 221 (D.C.Cir. 1974) ("Similarly situated defendants should be afforded equal plea agreement opportunities" in order to "protect the process from attack on equal protection grounds") (quoting ABA, Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty 60 (Approved Draft 1968)).

■ Nonetheless, appellant's contention is fatally flawed. There is no evidentiary record from which this court could even begin to evaluate her claim of differential treatment. The issue was not raised until sentencing, and no hearing was conducted by the district court. We have only appellant's assertion that a single Spanish national in purportedly similar circumstances was accorded more favorable treatment. Appellant's brief also makes unsupported reference to two other Colombian nationals—circumstances unknown—who were denied plea agreements. This meager, unsubstantiated proof falls woefully short of demonstrating a consistent pattern of unequal administration of the law. *See Oyler v. Boles*, 368 U.S. at 456, 82 S.Ct. at 505. No doubt the breadth of a prosecutor's discretion creates the potential for abuse. *See Bordenkircher v. Hayes*, 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978). On the evidence before us, however, we have no basis to question the United States Attorney's decision not to pursue a plea agreement in this case.

### B.

Appellant's second contention on appeal is that the jury's verdicts were inconsistent

**100**

to a degree warranting reversal of the conviction. While acquitting Bernal–Rojas of the charge of importing cocaine into the customs territory of the United States, the jury convicted her of possessing cocaine with intent to distribute it and of possessing cocaine on board an aircraft in United States customs territory. According to appellant, because these three offenses contain identical state of mind requirements, and other similar elements, if the jury found that appellant lacked the requisite knowledge for the importation charge, she should have been acquitted on the other counts as well. We disagree for several reasons.

■ To begin with, the Supreme Court has held that inconsistency in a jury verdict is not ground for reversal provided that sufficient evidence supports the counts of conviction. *United States v. Powell,* 469 U.S. 57, 67, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984); *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). Moreover, the verdicts do not appear to us to be inconsistent. The jury could have found, for example, that although appellant did possess the drugs on board the aircraft, and did intend to distribute them, she did not import them into the United States because her intent was to import them into Belgium.[2] This possible interpretation of the facts does not undermine the conviction for possession with intent to distribute, as "the place of intended distribution is not important so long as such intent is established together with the fact of possession within the United States." *United States v. Mejia–Lozano,* 829 F.2d 268, 271 (1st Cir.1987); *United States v. McKenzie,* 818 F.2d 115, 118 (1st Cir.1987). Finally, as Justice Holmes stated in *Dunn,* we may "interpret the acquittal as no more than [the jury's] assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Dunn,* 284 U.S. at 393, 52 S.Ct. at 190.

**2.** We are merely speculating as to the jury's reasoning. However, we note that conviction for importation under 21 U.S.C. § 952(a) does not require proof that the goods were actually

### C.

■ Appellant has mustered a rather ingenious, but baseless, attack on the possession on board an aircraft charge. The statute at issue provides:

It shall be unlawful for any person to bring or possess on board any vessel or aircraft, or on board any vehicle of a carrier, arriving in or departing from the United States or the customs territory of the United States, a controlled substance in schedule I or II or a narcotic drug in schedule III or IV, unless such substance or drug is a part of the cargo entered in the manifest or part of the official supplies of the vessel, aircraft, or vehicle.

21 U.S.C. § 955. At trial, a customs agent confirmed that cocaine was not on the cargo manifest for appellant's flight, so that the statutory exception was inapplicable.

Appellant asserts that because she was under no obligation to prepare a manifest or otherwise make a declaration, 21 U.S.C. § 955 does not apply to her. This is professed to be so because checked baggage is not required to be listed on the manifest, and there is no mechanism for in-transit passengers such as appellant to declare the contents of their baggage. Thus, she claims that her conviction on this count resulted in criminal liability for her failure to declare a substance when no opportunity was provided for her to declare it.

Discussion of this assertion need not detain us long. The statute does not prohibit failure to make a declaration. It makes it illegal to carry on board an aircraft a controlled substance or a narcotic drug except where the substance or drug is legitimately part of the manifested cargo on board. The United States customs service has statutory authority to inspect in-transit baggage. *United States v. Franchi–Forlando,* 838 F.2d 585, 587 (1st Cir.1988); *McKenzie,* 818 F.2d at 119–20. There is no merit to appellant's argument.

unloaded in United States territory. *United States v. McKenzie,* 818 F.2d 115, 118 (1st Cir. 1987).

### D.

Appellant finally submits that her presence in Puerto Rico was involuntary because her original flight had been cancelled and she had been rescheduled by the airline to take the flight which landed in Puerto Rico. She contends that her presence in United States territory was due to an intervening independent act which broke the chain of legal causation necessary to find her liable.

We reject this line of reasoning. Appellant's trial testimony shows that she made a free and voluntary choice to board the aircraft. The government need not prove knowledge that the plane would stop in the United States. *Franchi–Forlando*, 838 F.2d at 587; *Mejia–Lozano*, 829 F.2d at 271–72. There is, therefore, no basis in law for appellant's proximate cause argument.

### III.

Although creative, we find that this appeal is ultimately lacking in any issue of substantive value. We therefore affirm the conviction and the sentence imposed by the district court.

*Affirmed.*