**Henry CARABALLO–SANDOVAL and Cree Carmen Caraballo, Plaintiffs–Appellants,**

v.

**R.E. HONSTED, et al., Defendants–Appellees.**

No. 93–8004
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Oct. 14, 1994.

---

Henry Caraballo–Sandoval, pro se.

Cree Caraballo–Sandoval, pro se.

Melissa Mundell, U.S. Atty., Paul Gregory Justice, Asst. U.S. Atty., Savannah, GA, for appellees.

Before KRAVITCH, HATCHETT and BIRCH, Circuit Judges.

PER CURIAM:

Henry Caraballo–Sandoval (Caraballo–Sandoval) and Cree Carmen Cooper (Cooper) appeal the dismissal of their civil rights action brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] For the reasons stated below, we affirm in part and remand in part.

## FACTS

Cooper gained employment as a Career Resource Coordinator at the Federal Correctional Institution ("FCI") in Marianna, Florida. The FCI assigned her to the Education Department where she worked as a clerk for Caraballo–Sandoval. She subsequently resigned her position but requested privileges to periodically visit Caraballo–Sandoval at the FCI. The FCI approved Cooper's visitation privileges.

During her second visit, correctional officer Steven LaBier, suspected that Cooper had passed contraband to Caraballo–Sandoval and thus terminated the visit. Following an investigation into Caraballo–Sandoval's relationship with Cooper, Warden F.P. Samples informed Cooper that she had been removed from Caraballo–Sandoval's visitation list. Warden Joseph Class, who replaced Warden Samples, informed Cooper that she was removed from the visitation list because prison policy required that a person have an established relationship with an inmate prior to the inmate's incarceration to merit visitation privileges.

Meanwhile, during the investigation, the FCI placed Caraballo–Sandoval in dry cell status and later in administrative detention. After his release, Caraballo–Sandoval neglected to file a request for an administrative remedy regarding this treatment.

Prison officials later transferred Caraballo–Sandoval to an FCI in Jesup, Georgia, where again the officials denied Cooper visitation privileges. Warden R.E. Honsted at the Jesup FCI denied Coopers' visitation request because Cooper's background and knowledge of prison security procedures posed a threat to the security and orderly operation of the institution. Warden Honsted also echoed the concerns and policies of Wardens Sample and Class at the Marianna FCI regarding Cooper's failure to demonstrate that she had a relationship with Caraballo–Sandoval prior to his incarceration. Caraballo–Sandoval exhausted his administrative remedies in a challenge to the officials' decision, but was unsuccessful.

Cooper legally changed her name. Once Cooper effectuated her name change, Caraballo–Sandoval successfully gained visitation privileges for her. While a prison official escorted Cooper to a visiting room, he recognized her and terminated the visit.

Correctional officer James Vise investigated the incident and issued a disciplinary report charging Caraballo–Sandoval of misleading prison officials about the true identity of Cooper. After FCI officials found him guilty of the charge, they revoked thirty days of his "good time" credit and suspended his visitation privileges with Cooper for two years. At some point, Caraballo–Sandoval and Cooper were married.

Caraballo–Sandoval and Cooper filed this lawsuit in the United States District Court for the Southern District of Georgia against the numerous prison officials who frustrated Cooper's visitation attempts pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The complaint alleged that the wardens at Marianna and Jesup prevented Cooper from visiting

1. Because she changed her last name during these proceedings, Cree Carmen Caraballo will be hereafter referred to as Cooper.

Caraballo–Sandoval in violation of the First Amendment and the Bureau of Prisons policy. It further alleged that the officials violated due process rights in failing to respond to requests for a review of the termination decisions.

The complaint also alleged that prison officials placed Caraballo–Sandoval in dry cell and administrative detention status without following proper procedures, and retaliated against him for securing an approved special visit for Cooper. The complaint sought equitable relief in addition to compensatory and punitive damages.

The district court granted the officials' motions for summary judgement on all claims except Caraballo–Sandoval's administrative detention claim. The court dismissed that claim without prejudice pending the exhaustion of administrative remedies.

## DISCUSSION

### 1. Whether Cooper is a non-party to this appeal

The officials contend that Cooper is a non-party to this appeal because she failed to file a notice of appeal and an appellate brief. Moreover, she failed to file objections to the magistrate judge's report and recommendation *See Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir.1982).

■ Federal Rule of Appellate Procedure 3(c) allows a *pro se* party to sign a notice of appeal on behalf of a spouse. Consistent with the apparent objective of this rule—the facilitation of joint spousal appeals—we extend the rule to allow a *pro se* party to sign documents such as objections and a brief on behalf of a spouse, unless to do so would result in manifest injustice. *See* F.R.App.P. 3(c) ("A notice of appeal filed pro se is filed on behalf of the party signing the notice and the signer's spouse...."). Thus, Cooper is a proper party to this appeal.

### 2. Qualified immunity and stay of discovery

Caraballo–Sandoval and Cooper contend that clearly established law extended the First Amendment right to freedom of association to visitation privileges. They also argue that the regulations governing inmate visitation substantially limited the prison officials' discretion creating a liberty interest under the Fifth Amendment right to due process. They claim that the court should have granted discovery to determine that the officials violated that clearly established law. They further contend that the district court erred in finding that the officials reasonably rejected their claim that they had a relationship prior to Caraballo–Sandoval's confinement.

The officials respond that their denial of visitation privileges was within their sole discretionary authority and did not violate any clearly established law. They also contend that the court properly stayed discovery to resolve the issue of qualified immunity.

■ As the officials recount, qualified immunity seeks to protect government officials from the cost of trial and the burdens of broad reaching discovery. *See Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Consequently, a court may resolve the issue of qualified immunity before allowing discovery. *Id.* Hence, the district court properly stayed discovery until it decided the qualified immunity issue.

■ Qualified immunity protects government official performing discretionary functions from civil liability if their conduct violates no clearly established statutory or constitutional rights. *Courson v. McMillian,* 939 F.2d 1479, 1486 (11th Cir.1991). The inquiry necessarily involves two questions: First, whether the defendants acted within the scope of their discretionary authority, and second whether the defendants' actions violated clearly established law. *Sims v. Metropolitan Dade County,* 972 F.2d 1230, 1236 (11th Cir.1992).

■ In this case, the officials established that their decision to terminate the visitation privileges of Cooper and Caraballo–Sandoval was within their discretionary authority— their duties included regulating and supervising the time and manner of inmate visits.

Caraballo–Sandoval and Cooper, however, have failed to pinpoint a violation of clearly established law. First, as to the First Amendment claim, inmates do not have an absolute right to visitation, such privileges being subject to the prison authorities' discretion provided that the visitation policies meet legitimate penological objectives. We believe that concerns that former prison employees visiting inmates may pose a threat to security because of their knowledge of security procedures constitutes a legitimate penological objective.

Second, regarding Caraballo–Sandoval and Cooper's Fifth Amendment claim, they argue that the visitation regulations contain mandatory language that substantially limits the prison officials' discretion, thereby creating a liberty interest in visitation. Upon a review of the visitation regulations we find no such mandatory language:

> The warden may restrict inmate visiting when necessary to ensure the security and good order of the institution.
>
> The visiting privileges shall ordinarily be extended to friends and associates having an established relationship prior to confinement, unless such visits could reasonably create a threat to the security and good order of the institution. Exceptions to the prior relationship rule may be made, particularly for inmates without other visitors....

Hence, the language does not create a protected liberty interest in visitation privileges. We conclude that the district court properly granted the officials' summary judgement motions based upon qualified immunity.

### 3. Administrative detention

The officials contend that Caraballo–Sandoval failed to fully exhaust his administrative remedies concerning his claim that they violated prison regulations in placing him in administrative detention at the Marianna and Jesup FCIs. Caraballo–Sandoval responds that he exhausted administrative remedies and that the administrative body was biased in denying his appeals.

Under the administrative remedy procedure for inmates, an inmate must informally present a complaint to the staff or the regional director. 28 C.F.R. § 542.13(a), (c). The inmate may appeal the regional director's decision to the general counsel. 28 C.F.R. § 542.15.

Caraballo–Sandoval neglected to apply for any administrative remedy after his placement in dry cell at the Marianna FCI. Thus, he failed to exhaust administrative remedies for that incident. *Pyles v. Carlson,* 698 F.2d 1131, 1132 (11th Cir.1983) (Generally, federal prisoners must exhaust administrative remedies before filing suit against prison officials); *but see McCarthy v. Madigan,* —— U.S. ——, ———— ——, 112 S.Ct. 1081, 1088–90, 117 L.Ed.2d 291 (1992) (A prisoner need not exhaust the prison's administrative remedies before bringing a *Bivens* action solely for money damages). Because Caraballo–Sandoval requested more than just money damages, the district court properly dismissed his claim for failure to exhaust administrative remedies. *See id.*

With regard to Caraballo–Sandoval's placement in administrative detention at the Jesup FCI, he exhausted administrative remedies. Thus, we remand this claim to the district court for a determination on the merits.

### 4. Whether the Court Has Personal Jurisdiction Over LaBier and Class

Caraballo–Sandoval asserts that the district court erred in dismissing LaBier and Class for lack of personal jurisdiction. LaBier and Class respond that the plaintiffs failed to properly serve them.

According to Georgia's long-arm statute, LaBier and Class do not have the minimum contacts with Georgia to bring them within the state's personal jurisdiction. *See Cable/Home Communication v. Network Productions,* 902 F.2d 829, 955–57 (11th Cir. 1990). Under Georgia's long-arm statute, a court of that state may exercise personal jurisdiction over any non-resident if in person or through an agent the non-resident (1) transacts any business in Georgia; (2) commits a tortious act or omission within Georgia except defamation; or (3) commits a tortious injury in Georgia caused by an act or omis-

**526**

sion outside the state if the non-resident solicits business in-state. Ga.Code Ann. § 9–10–91.

LaBier and Class have declared that they do not reside in Georgia and do not own any property, real or personal, in Georgia. Furthermore, Caraballo–Sandoval and Cooper do not allege that LaBier and Class committed any malfeasance in Georgia. Thus, LaBier and Class fall outside the scope of Georgia's long-arm statute. Accordingly, we affirm the order of the district court dismissing them from this action.

## CONCLUSION

For the foregoing reasons, this case is AFFIRMED in part and REMANDED in part.