Melissa BLAIR, et al., Plaintiffs,

v.

Julie LOOMIS, et al., Defendants.

No. 1:97 CV 2956.

United States District Court,
N.D. Ohio,
Eastern Division.

April 14, 1998.

Melissa Blair, Garfield Hts., OH, LeMont F. Blair, Grafton, OH, plaintiffs pro se.

Robert C. Angell, Office of the Attorney General, Corrections Litigation Section, Columbus, OH, for defendants.

## MEMORANDUM OF OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR TRO AND PRELIMINARY INJUNCTION

WELLS, District Judge.

### Introduction

This case is before the Court on the plaintiffs' motion for temporary restraining order and preliminary injunction (docket no. 2). The defendants' memorandum in opposition (docket no. 10), the plaintiffs' memorandum of law (docket no. 12), and the plaintiffs' response to the defendants' memorandum (docket no. 13) also have been considered. On March 24, 1998, a hearing was held, limited to the issue of current visitation between the plaintiffs.

At the hearing, the parties stipulated certain facts and offered testimony and exhibits; the plaintiffs also offered affidavits for consideration. For the reasons which follow, the plaintiffs' motion is denied.

### Background

The plaintiffs Melissa Blair and LeMont Blair, an inmate at Grafton Correctional Institution ("Grafton"), brought this action pursuant to 42 U.S.C. § 1983, alleging violation of their rights under the First, Fourth and Fourteenth Amendments to the United States Constitution. Their claims pertain to prison visitation and the ability to exchange money and packages. The defendants are Julie Loomis (Grafton Unit Manager), Roger Vandersommen (Grafton Case Manager), Daniel Ames (Grafton Unit Sergeant), Patrick Provoznick (Grafton Correctional Officer), and Carl S. Anderson (Grafton Warden).

Melissa Blair was a correctional officer at a different Ohio correctional facility where LeMont Blair was housed prior to his transfer to Grafton. The plaintiffs were married during LeMont Blair's incarceration at Grafton.

On March 27, 1997, Melissa Blair's visiting privileges at Grafton were suspended by Unit Manager Loomis. One basis for her suspension was that Melissa Blair had falsified information regarding her former employment as a correctional officer on her previous Visitor Application, which she admits having done. The suspension decision required Melissa Blair to submit a corrected Visitor Application for processing in order to be considered for reinstatement. To obtain a new Visitor Application form, LeMont Blair submitted a Request for Modification to Visiting List, on which he requested the addition of Melissa Blair. On September 22, 1997, Warden Anderson denied the request to add Melissa Blair to LeMont Blair's Visiting List.

The decision denying the request referred to provisions of Section K of the Ohio Department of Rehabilitation and Correction Visiting Manual which provide:

5. The following factors should be strongly considered as a basis for denial [of visitation]:

. . .

f. The visitor has no previous relationship with the inmate prior to incarceration.

g. The visitor is or was an employee, vendor, volunteer, or contract employee of the Department of Rehabilitation and Correction.

### Law and Analysis

The legal standard for preliminary injunctive relief is well established:

> When ruling on a motion for a preliminary injunction, a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross and Blue Shield Ass'n,* 110 F.3d 318, 322 (6th Cir.1997). Accordingly, the Court will discuss each of these factors.

■■■■ *Likelihood of success on the merits.* The plaintiffs contend they have a liberty interest in visitation. It is well settled that a prisoner has no constitutional liberty interest in visitation. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). However, state law may create a liberty interest in the prison setting. *Id.* at 461. The plaintiffs claim a liberty interest in visitation by a spouse is created by Ohio Administrative Code ("OAC") § 5120–9–15, which states in part:

> (B) In general, visits by the inmate's spouse . . . shall be permitted. . . . No institution shall deviate from this paragraph without written authorization from the Director.

However, § 5120–9–15 also provides:

> (C) It is recognized that certain visitors should be excluded. A visitor may be excluded when there are reasonable grounds to believe that:

> (1) the visitor's presence in the institution could reasonably pose a threat to the institution's security, or disrupt the orderly operations of the institution . . .

> (H) . . . When an individual is suspended or removed from an inmate's approved visiting list, pursuant to the criteria in paragraph (C) of this rule, the individual shall be notified in writing of the action that has been taken and the reasons therefor. The individual shall be given the opportunity to present his (her) views concerning such suspension or removal to the managing officer or designee, who shall then make the final determination.

Ohio federal district courts have uniformly held § 5120–9–15 does not create a liberty interest in visitation. *See, e.g., Rodriguez v. Wilkinson,* No. 3:95 CV 7023 (N.D.Ohio March 1, 1996), and *Johnson v. State of Ohio,* No. C2–94–913 (S.D.Ohio March 31, 1995). These decisions are persuasive.

■■■■ The court in *Johnson* reached its conclusion relying on the standard set forth in *Kentucky Dep't of Corrections v. Thompson* that a liberty interest may not be found in the absence of "mandatory language." Interpreting OAC § 5120–9–15, the *Johnson* court held that, taken as a whole, the section does not contain mandatory language requiring visitation by any particular person.[1]

■■■■ In *Rodriguez,* United States District Judge David A. Katz relied on *Thompson* and on a more recent Supreme Court case, *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), which returned the focus of liberty interest inquiry from language of a statute or regulation to the nature of the interest. The types of liberty interests created by states are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 132 L.Ed.2d at 430. Judge Katz in

---

1. The Supreme Court of Ohio, applying *Thompson,* also has held that OAC § 5120–9–15 is not sufficiently mandatory to create a protected liberty interest. *State ex rel. Manson v. Morris,* 66 Ohio St.3d 440, 442, 613 N.E.2d 232 (1993).

*Rodriguez* noted: "The Supreme Court expressly held in *Thompson* that '[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence.' ... The rights of [a prisoner's] relatives to visitation privileges rise and fall with [the prisoner's] rights." Slip op. at 8.

■ Additionally, in *State ex rel. Manson v. Morris,* 66 Ohio St.3d 440, 613 N.E.2d 232 (1993), the Supreme Court of Ohio stated that "[b]ecause [a potential visitor] was a former correctional officer ... [of another Ohio correctional institution], she could reasonably be considered a security risk based upon her training in security procedures and knowledge of facility operations." *Id.* at 442, 613 N.E.2d 232.

The plaintiffs' evidence that a few former correctional officers have enjoyed visitation privileges does not invalidate this general principle or the Visiting Manual rule based upon it.

In addition, contrary to the argument of the plaintiffs, the evidence does not establish that the denial of visitation was in violation of equal protection of the law because Melissa Blair is a former correctional officer or that the denial was based upon the fact that LeMont and Melissa Blair are of different races.

For these reasons, the plaintiffs do not have a strong likelihood of success on the merits of their claims regarding visitation.

■ *Irreparable injury.* The plaintiffs assert that the denial of visitation effectively limits their communication to letters and unaffordable telephone calls and interferes with their marriage. One of the partners in this marriage is incarcerated and was incarcerated when they were married. The other partner admits she falsified information on her prior Visitor Application. Their communication bears the burdens of these facts. The plaintiffs have not demonstrated that they would suffer irreparable injury without the injunctive relief they seek.

■ *Substantial harm to others.* The plaintiffs argue the issuance of a preliminary injunction would affect mainly the plaintiffs and only incidentally the defendants. How-

ever, the defendants correctly assert that an injunction allowing the plaintiffs visitation here would interfere with the defendants' strong interest in the enforcement of their rules and policies. "[P]roblems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts." *Bazzetta v. McGinnis,* 124 F.3d 774, 779 (6th Cir.1997) (citations omitted).

■ *Public Interest.* The public has an interest in families being close and in prisoners building relationships that will help them live law-abiding lives upon their release, as the plaintiffs assert. The defendants agree this is a public interest, but argue that the plaintiffs' situation stems from their own actions and that the public also has an interest in a safe and orderly prison system. Under the circumstances of this case, the latter interest would be disserved by compelling a result contrary to a decision reached under prison rules and policies.

### Conclusion

Upon consideration and balancing of the foregoing factors, the plaintiffs' motion for temporary restraining order and preliminary injunction is denied.

IT IS SO ORDERED.