# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-1463

_____

| | | |
|---|---|---|
| Allen B. Ware, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Marvin D. Morrison, Warden, FCI - | * | District Court for the |
| Forrest City; Glen E. Trammel, | * | Eastern District of Arkansas. |
| Warden, Bureau of Prisons, FPC | * | |
| Nellis, Nevada; Jinny Van Buren, Ms., | * | |
| Associate Warden, FCI - Forrest City, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted:  October 2, 2001

Filed:

_____

Before BOWMAN, HEANEY, and BYE, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Allen B. Ware, a federal prisoner, brought this Bivens suit against federal prison officials Marvin Morrison, Glen Trammel, and Jinny Van Buren.[1] Ware claims that his due-process rights were violated by the temporary suspension of visiting privileges for his wife and two other women. Ware seeks damages from the defendants as well as injunctive relief. The defendants appeal from the denial of their motion to dismiss or for summary judgment on the basis of qualified immunity. In addition to denying their motion for qualified immunity, the District Court, pending the final outcome of the case, partially granted Ware's request for an injunction by requiring the defendants to give Ware visitation privileges with his wife. Defendants also appeal this grant of a preliminary injunction. We reverse the District Court's denial of qualified immunity to the prison officials and vacate the injunction.

I.

Certain facts material to Ware's suit are not in dispute. In March 1999 while incarcerated at Federal Prison Camp-Fort Nellis (FPC-Nellis), Ware was found in possession of contraband. Immediately preceding this incident, Ware had a series of visitors, one of whom was his wife. The misuse of extra prison-visitation passes had facilitated some of these visits. After Ware was found with contraband, disciplinary procedures were invoked pursuant to Bureau of Prison regulations, including an incident report and investigation. See 28 C.F.R. § 541.14 (2001). Further, Ware received written notice of the charges and attended a hearing before the Unit Discipline Committee, which subsequently referred the charge along with recommendations to the Discipline Hearing Officer (DHO). The DHO made written findings in a report dated March 23, 1999. The DHO sanctioned Ware with loss of good-time credits and a disciplinary transfer. The DHO did not limit Ware's visitation privileges.

---

[1] See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

On April 8, 1999, FPC-Nellis Warden Trammel concluded that, for the safety of the institution and to avoid security threats, Ware's visitation privileges should be suspended with respect to his wife and two other women who apparently were also involved in helping Ware obtain contraband goods. In a letter to Ware's wife, a copy of which was placed in Ware's file, Warden Trammel notified her that she could not visit her husband for eighteen months. Later, after Ware was transferred to the Federal Corrections Institution at Forrest City, its warden, defendant Morrison, kept the suspension of Ware's visitation privileges in place for the same period of time. Ware alleges that the defendants' actions violated his constitutional rights under the Due Process Clause. Defendants maintain that actions restricting Ware's ability to receive particular visitors did not violate his rights under clearly established law or otherwise.

II.

We first address the denial of the defendants' motion for summary judgment on the grounds of qualified immunity. We review the District Court's order denying summary judgment de novo. See Sexton v. Martin, 210 F.3d 905, 909 (8th Cir. 2000); Cornell v. Woods, 69 F.3d 1383, 1390 (8th Cir. 1995). Following the most recent Supreme Court decision on qualified immunity, we undertake a two-step inquiry. See Saucier v. Katz, 121 S. Ct. 2151, 2155 (2001). First, we must inquire whether the facts alleged, when taken in the light most favorable to the party asserting the injury, show that the defendant officials violated a constitutional right. See id. at 2156. If we determine that the plaintiff has shown a violation of a constitutional right, we then must inquire whether the constitutional right was clearly established. See id.

Ware argues that he has met the first prong of the qualified-immunity inquiry because his Fifth Amendment due-process rights were violated when Warden Trammel suspended his visitation privileges without a hearing. We must determine whether Ware, while serving time in federal prison, has a constitutional right to visitation. Government actions affecting the conditions of prison confinement implicate a

-3-

prisoner's constitutional rights only where the actions impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472, 483-84 (1995).

Ware's loss of visitation privileges is within the ordinary incidents of confinement and cannot be considered an atypical and significant hardship. See Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460-61 (1989) (holding that an inmate's interest in visitation does not rise to a liberty interest protected under the Due Process Clause); Harmon v. Auger, 768 F.2d 270, 272 (8th Cir. 1985) (holding that a prisoner does not have a liberty interest in contact visits). The discipline imposed upon Ware simply does not fall outside the expected parameters of incarceration. See Key v. McKinney, 176 F.3d 1083, 1086-87 (8th Cir. 1999) (rejecting due-process claim challenging the use of shackles for punishment because discipline by prison officials for a variety of misconduct falls within the expected parameters of incarceration).

In a case strikingly similar to this one, Caraballo-Sandoval v. Honsted, 35 F.3d 521, 524 (11th Cir. 1994) (per curiam), a prisoner's visitation privileges with his wife were suspended due to suspicion that the wife was passing contraband to the prisoner. The Eleventh Circuit affirmed the dismissal of the suit, holding that the prison officials were entitled to qualified immunity and that the decision to curtail visitation privileges was discretionary and did not implicate the prisoner's constitutional right to due process. Id. at 525. We agree with the Eleventh Circuit in Caraballo-Sandoval and we hold that Ware had no constitutionally protected interest implicated by the suspension of his visitation privileges.

Ware attempts to carve a protected niche for himself by arguing that Warden Trammel ordered the suspension of his privileges for punitive reasons. He further argues that because he was given a hearing and punished by the DHO for his involvement in smuggling contraband into the prison, the imposition of this extra punishment without a hearing violated his due-process rights.

-4-

Ware's argument, however, is beside the point, for the question of whether the suspension of Ware's visitation privileges was for punitive reasons is immaterial. Only sanctions that impose atypical and significant hardships upon a prisoner in relation to the ordinary restraints and incidents of prison life implicate the Due Process Clause. Sandin, 515 U.S. at 483-84. The suspension of Ware's visitation privileges with respect to his wife and two other women does not impose upon Ware an atypical and significant hardship. Accordingly, the suspension of these visitation privileges without affording Ware a hearing would not infringe Ware's due-process rights even if in fact the warden had ordered the suspension as punishment for Ware's involvement with his visitors in smuggling forbidden goods into the prison.

Because the suspension of Ware's visitation privileges did not violate Ware's due-process rights, the District Court's entry of the injunction requiring defendants to allow Ware to have visits with his wife was an abuse of discretion. See Shen v. Leo A. Daly Co., 222 F.3d 472, 477 (8th Cir. 2000) (standard of review). The injunction must be vacated.

The order of the District Court denying the defendants' motion for summary judgment on the grounds of qualified immunity is reversed, the injunction entered by the District Court is vacated, and the case is remanded with directions that judgment be entered for the defendants and the case be dismissed.

HEANEY, Circuit Judge, concurring.

I concur in the result, but write separately to clarify the warden's responsibilities and to note that the wardens may have acted outside the scope of their authority.

First, I note that Ware had a right not to have further punishment imposed upon him by the wardens after the Disciplinary Hearing Officer (DHO) issued sanctions

against him for smuggling contraband[2] into the prison camp.  See 28 C.F.R. § 541.19 (2001) (stating that a warden may not "increase any valid sanction imposed.").  The regulations make clear that the Unit Discipline Committee (UDC) or the DHO, not the warden, has the authority to impose sanctions for violations of prison rules.  See generally 28 C.F.R. §§ 541.13-.19.  The warden may ask the DHO or UDC for a rehearing after the issuance of a decision, but the warden may not increase the sanctions imposed upon the prisoner.  See 28 C.F.R. § 541.19.  Although a warden may suspend visitation privileges for security reasons, he or she may not do so as an additional form of punishment.  Compare 28 C.F.R. § 540.40 with 28 C.F.R. § 541.19.

The question becomes, then, whether Ware states a claim that the wardens violated his Fifth Amendment rights by suspending his visitation privileges for punitive reasons.  Citing Sandin, the majority advances that because a limitation on visitation privileges does not impose an atypical and significant hardship on Ware, he does not assert a violation of a liberty interest protected by the Due Process Clause.  See Sandin v. Conner, 515 U.S. 472, 483-84 (1995) (noting that although prison regulations were violated, a prisoner in a maximum security prison who was put in solitary confinement for thirty days did not assert a due process violation because the confinement was not an atypical or significant hardship under the circumstances).

I reluctantly agree with the majority's reasoning.  Ware alleges a violation of prison procedures, but after Sandin, it appears he has no remedy.  Therefore, I concur

---

[2]The contraband consisted of all the elements of a "surf and turf" dinner: "five freshly cut steaks, one four-pound box of frozen shrimp, four one-pound packages of linguine, one 375 ml bottle of Cuervo Tequila, one 375 ml bottle of Hennessy Cognac, and one 375 ml bottle of Azile Passion Fruit Cognac."  Ware v. Morrison, No: 2:99CV00210JFF, slip op. at 1 n.1 (E.D. Ark. 2000) (Proposed Findings and Recommendation).

that Ware's Fifth Amendment claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.