[NOT FOR PUBLICATION—NOT TO BE CITED AS PRECEDENT]

# United States Court of Appeals
## For the First Circuit

No. 01-2367

FRED E. DEWITT,

Plaintiff, Appellant,

v.

A.T. WALL,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]
[Hon. Jacob Hagopian, U.S. Magistrate Judge]

Before

Selya, Circuit Judge,
Campbell, Senior Circuit Judge,
and Lipez, Circuit Judge.

Fred E. DeWitt on brief pro se.
Patricia A. Coyne-Fague on motion for summary affirmance for appellee.

June 21, 2002

**Per Curiam**. Pro se appellant Fred DeWitt, who is an inmate at the Adult Correctional Institution in Rhode Island, appeals from the grant of summary judgment in favor of appellee, A.T. Wall, the Director of the Rhode Island Department of Corrections ("RIDOC"). In his suit under 42 U.S.C. § 1983, DeWitt sought monetary and injunctive relief relative to a new prison policy banning visits by certain former correctional employees. Under the policy, DeWitt's wife, Pamela, was unable to visit him, but she had alternative means of communicating with him since she could write to him and speak with him on the telephone. On appeal, DeWitt has asserted various claims of error, but we find none of them to be persuasive. Therefore, we affirm, essentially for the reasons given in the magistrate judge's report and recommendation dated July 31, 2001, which the district court accepted as the basis for its September 6, 2001 order granting summary judgment. We make only the following comments.

First, the case law confirms that the district court properly concluded that a policy like the one at issue here is rationally connected to legitimate concerns about prison security. See Caraballo-Sandoval v. Honsted, 35 F.3d 521, 525 (11th Cir. 1994) (affirming summary judgment on claim challenging ban on visits by former prison employee whom plaintiff later married because prison officials were concerned

-2-

that former employee might pass on knowledge of security procedures); Blair v. Loomis, 1 F. Supp. 2d 769, 771-72 (N.D. Ohio 1998) (denying motions for temporary restraining order and preliminary injunction relative to ban on visits by wife, a former correctional employee, pursuant to policy that discouraged visits by former employees or persons lacking a pre-incarceration relationship with the inmate); Welz v. Degregorio, 646 F. Supp. 522, 523 (E.D. Pa. 1986) (denying motion for temporary restraining order relative to ban on contact visits by former correctional officer, who had resigned during investigation into her fraternization with plaintiff, where the warden had expressed security concerns); State ex rel. Manson v. Morris, 66 Ohio St. 3d 440, 442, 613 N.E.2d 232, 234 (1993) (denying petition for writ of mandamus relative to denial of visits by girlfriend, who was former correctional officer, since defendants could reasonably view her as "a security risk based on her training in security procedures and knowledge of facility operations").

Second, DeWitt claims that the policy, even if seemingly neutral, actually targets his wife, or is being applied vindictively. However, he has not pointed to any evidence of record that would impugn Director Wall's assertion that security concerns motivated the policy, and, on the undisputed facts of record, the policy applies to Pamela DeWitt. Contrary to DeWitt's claim, the June 20, 2000 letter by Wall to Pamela -- stating that he had referred her request

-3-

for visiting privileges to a warden -- does not show that Wall did not think that her status as a former correctional officer made her a security risk. There is no evidence that Wall, who assumed his present position well after Pamela (then surnamed "Manson") had resigned her employment, knew that the "Mrs. Pamela DeWitt" to whom he wrote was a former corrections officer. Nor does it matter whether Pamela previously had visited DeWitt "without incident," as DeWitt says, because Wall could act preemptively to prevent breaches of security. Casey v. Lewis, 4 F.3d 1516, 1521 (9th Cir. 1993) (sustaining ban on attorney-inmate contact visits, which was based on desire to prevent assaults, escapes, and hostage-taking, despite fact that defendant had not pointed to prior problems arising out of such visits).

Finally, it may be that former correctional employees who are presently incarcerated have visitors, as DeWitt claims in unsworn statements. Nonetheless, that fact does not establish an equal protection violation because DeWitt is not similarly situated. He is not a former correctional employee who is incarcerated, but an inmate whose spouse is an unincarcerated former correctional employee, meeting specified criteria, who seeks to visit him. The present policy reasonably addresses the security risks posed by the latter situation. There is no equal protection violation. See United States v. Bernal-Rojas, 933 F.2d 97, 99 (1st Cir. 1991) (indicating that a prima facie equal protection claim would be

made out if the plaintiff were to show that the government had treated similarly situated persons differently); see also Casey, 4 F.3d at 1521 (indicating that the appropriate inquiry is whether a prison visitation regulation has a rational connection to a legitimate penological goal, not whether the goal would be better served by a more comprehensive ban on visitation).

We summarily affirm the judgment below. See Loc. R. 27(c).