[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10522
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cv-00165-WLS-TQL

DONALD WAYNE TOENNIGES,

Plaintiff-Appellant,

versus

GEORGIA DEPARTMENT OF CORRECTIONS, et al.,

Defendants,

KEITH JONES,
DR. SMITH,
WARDEN, CALHOUN STATE PRISON,
DEBRA EDWARDS,
NURSE PATRICIA BROWN,
JOHNSON,
HSA SATTERFIELD,
DR. HENDERSON,
LT. TARVER,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(January 23, 2015)

Before TJOFLAT, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Donald Toenniges, a formerly incarcerated inmate proceeding pro se, appeals following the dismissal of his civil rights action filed under 42 U.S.C. § 1983 alleging, among other things, that officials at two penal institutions violated his constitutional rights. Specifically, he alleges that Keith Jones and Debra Edwards improperly denied him visitation rights, Lt. Tarver retaliated against him for exercising certain rights, and Dr. Smith, Nurse Brown, and Dr. Henderson were deliberately indifferent to his medical needs. The district court originally entered a final judgment against Toenniges in 2011, but on appeal, we vacated and remanded the case for further proceedings. See Toenniges v. Georgia Dept. of Corr., 502 Fed. App'x 888 (11th Cir. 2012) (unpublished). In 2014, the district court once again entered a judgment against Toenniges, this time concluding that he failed to timely serve Nurse Brown with service of process, and that he failed to administratively exhaust his claims against the remaining defendants. On appeal, Toenniges argues that: (1) he properly served Nurse Brown or had good cause for the failure to do so; (2) as to Jones and Edwards, he was not required to use the administrative grievance procedure to grieve the denial of court ordered visitation;

2

and (3) as to Lt. Tarver, Dr. Smith, and Dr. Henderson, he completely exhausted administrative remedies.  After thorough review, we affirm.

Under Fed.R.Civ.P. 12(b)(5), we review a dismissal for insufficient service of process de novo as to legal issues, and for clear error as to findings of fact. Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007).  We review de novo a district court's dismissal for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA").  Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005). However, we review any factual findings underlying an exhaustion ruling for clear error.  Bryant v. Rich, 530 F.3d 1368, 1377 (11th Cir. 2008).

First, we are unpersuaded by Toenniges's claim that the district court erred in concluding that he had failed to timely serve Nurse Brown.  Pursuant to Fed.R.Civ.P. 4(m), the district court may dismiss an action for failure to complete service of process within 120 days.  The district court may do so either on the motion of a party, or on its own once notice is given and the party in error fails to show good cause for the lack of timely service.  Pardazi v. Cullman Medical Center, 896 F.2d 1313, 1316 (11th Cir. 1990).  However, when a litigant proceeds in forma pauperis, the district court may order the U.S. Marshal to serve a defendant named in the complaint.  See 28 U.S.C. § 1915(d).  In Richardson v. Johnson, 598 F.3d 734 (11th Cir. 2010), we held that it was "unreasonable to

3

expect incarcerated and unrepresented prisoner-litigants to provide the current addresses of prison-guard defendants who no longer work at the prison." Id. at 739–740. We concluded "that, as long as the court-appointed agent can locate the prison-guard defendant with reasonable effort, prisoner-litigants who provide enough information to identify the prison-guard defendant have established good cause for Rule 4(m) purposes." Id. at 740.

Here, the evidence showed that Toenniges did not complete service of process on Nurse Brown within 120 days of April 10, 2013, when his amended complaint was reinstated. His argument that he sent the complaint via certified mail is unavailing since that is not an approved method of service. Moreover, his claim that he did not receive adequate notice that his failure to perfect service could lead to Brown's dismissal is rebutted by the record. As the record shows, Toenniges requested a motion for extension of time to respond to Brown's motion to dismiss, based in part on service of process grounds, before the time to serve her had run. Furthermore, although the district court granted Toenniges assistance from the U.S. Marshals to complete service of process while he was incarcerated, he was no longer incarcerated when his amended complaint was reinstated and he was required to serve the amended complaint on Brown, and the court correctly noted that he was not proceeding in forma pauperis. Thus, the district court did not

4

err in finding that he failed to show good cause for his failure to timely complete service of process, nor in dismissing Nurse Brown for failed service of process.

We also find no merit to Toenniges's claim that the district court erred in concluding that he had failed to administratively exhaust his claims against Jones and Edwards. The PLRA provides that "[n]o action shall be brought" by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To evaluate the exhaustion of administrative remedies, first, the district court looks to the parties' factual allegations, and if they conflict, the court takes the plaintiff's version as true. Turner v. Burnside, 541 F.3d 1077, 1082-84 (11th Cir. 2008). If, per the plaintiff's account, the administrative remedies have been exhausted, then the court proceeds to step two. At step two, the defendants bear the burden of proving that the plaintiff did not exhaust administrative remedies. Id. At this stage, the court makes factual findings on whether or not the plaintiff exhausted the available remedies. Id. at 1083. To the extent the factual findings lead to procedural dismissal as opposed to dismissal on the merits, the district court is free to make any findings necessary to resolve the issue. Bryant, 530 F.3d at 1376-77. If the remedies are not found to be exhausted, then dismissal is appropriate. Turner, 541 F.3d at 1083.

The Georgia Department of Corrections ("GDOC") Standard Operating Procedures ("SOP") provided the administrative grievance process applicable to

5

Toenniges.   Georgia Dep't of Corrections SOP IIB05-001 VI; <u>Brown</u>, 212 F.3d at 1207.  Exhaustion requires the inmate to complete three steps.  Georgia Dep't of Corrections SOP IIB05-001 VI.  The inmate must (1) file an informal grievance, (2) file a formal grievance, and (3) file an appeal. <u>Id</u>.  The informal grievance must be filed within ten days of the date the inmate knew or should have known of the harm that occurred.  SOP IIB05-001 VI(B)(5).  The counselor must respond to the informal grievance, and, if the inmate is dissatisfied with that response, he may request a form to file a formal grievance with the Warden or Superintendent.  SOP IIB05-001 VI(B).  If the Warden or Superintendent violates the time limit for responding to a formal grievance, then the inmate may proceed directly to appeal to the Commissioner.  SOP IIB05-001 VI(A)(11).  Finally, if the Warden is timely and the inmate is still dissatisfied, the inmate must file a direct appeal with the Commissioner's office.  SOP IIB05-001 VI(D).  The forms to directly appeal to the Commissioner are kept in the control unit of each living area where they are accessible to inmates.  SOP IIB05-001 VI(D)(1).

Among many things, the exhaustion requirement is designed to incentivize efficient grievance resolution, to reduce frivolous litigation against prisons, and to improve the quality of the record of a grievance should it reach the federal courts. <u>Porter v. Nussle</u>, 534 U.S. 516, 524-25 (2002).  Inmates must properly exhaust the grievance procedures unless the reason for not doing so is extreme. <u>Woodford v.</u>

Ngo, 548 U.S. 81, 92 (2006) (holding that proper exhaustion, rather than mere circumvention of available procedures, was a necessary prerequisite to filing a grievance in court, but that failure will be excused if procedures are rendered unavailable); Turner, 541 F.3d at 1085 (holding that a procedure may be unavailable and the failure to exhaust it may be excusable if its unavailability is caused by extreme threats of physical retaliation); Miller v. Tanner, 196 F.3d 1190 (11th Cir. 1999). Inmates cannot circumvent proper grievance procedures simply because they are less speedy or effective than desired. Porter, 534 U.S. at 524.

In this case, Toenniges failed to exhaust administrative remedies for his denial of visitation claim against Jones and Edwards. The divorce decree upon which he based his claim for court-ordered visitation did not excuse him from the need to exhaust administrative remedies regarding the denial of his visitors at the prison. Although the SOPs do not directly indicate whether prisoners need to file a grievance to complain of visitation problems, prisons have a compelling interest in maintaining safety, security, and efficient operation. Caraballo-Sandoval v. Honsted, 35 F.3d 521, 525 (11th Cir. 1994). Thus, because of the important institutional interest in security and the PLRA's goal to give institutions an opportunity to internally resolve issues, it follows that prisoners must exhaust administrative remedies regarding denial of visitation claims prior to taking legal action. Toenniges, however, failed to even attempt to use the administrative

7

remedies to address his denial of visitation claim. The district court did not err in dismissing this claim for failure to exhaust administrative remedies.

Finally, we reject Toenniges's claim that the district court erred in concluding that he had failed to administratively exhaust his claims against Lt. Tarver, Dr. Smith, and Dr. Henderson. We interpret the PRLA to "mandate[ ] strict exhaustion" no matter "the forms of relief sought and offered through administrative avenues." Johnson, 418 F.3d at 1155 (quotation marks omitted). To exhaust administrative remedies, a prisoner must complete the administrative review process according to the rules set forth in the prison grievance process itself. Jones v. Bock, 549 U.S. 199, 218 (2007). Section 1997e(a) makes exhaustion "a precondition to filing an action in federal court." Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (quotation marks omitted).

Exhaustion of the grievance procedure does not require that every single defendant be identified by name. Parzyck v. Prison Health Servs. Inc., 627 F.3d 1215, 1218 (11th Cir. 2010); Brown, 212 F.3d at 1209-10 (holding that a defendant need only provide all the information he has or could reasonably obtain). Further, exhaustion does not necessarily require an inmate to file a new grievance for each harmful incident in a string of related occurrences. Parzyck, 627 F.3d at 1218. Parzyck held that an inmate did not fail to exhaust administrative remedies against a prison doctor by failing to name him, where the inmate filed a grievance before

8

the specific doctor began treating him, and exhausted the process during the doctor's treatment. Id. The critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally.

As for Toenniges's claim against Lt. Tarver, the record confirms that Toenniges failed to properly complete the grievance process. Based on the SOP's plain language, a delay on the prison's behalf at the informal grievance phase did not authorize him to proceed to a direct appeal to the Commissioners. Furthermore, Toenniges did not request a formal grievance form, and he does not argue that he was denied access to the direct appeal form.

As for his claim against Dr. Smith, Toenniges also failed to exhaust administrative remedies. The district court's factual finding that Toenniges's 2008 medical grievance contained issues different from those contained in his deliberate indifference claim was not clearly erroneous. While the 2008 grievance complained of his orthotics, prescription refills, and an update to his charts, his deliberate indifference claim included some different elements including complaints about shoulder problems and failed treatment. Thus, Toenniges's situation is distinct from the one in Parzyck because the substantive discrepancy between his 2008 grievance and his deliberate indifference claim casts doubt on the fact that the prison was on notice of his grievance against Dr. Smith.

9

Finally, as for his claim against Dr. Henderson, Toenniges also failed to exhaust administrative remedies. Toenniges attempted to rely on a general medical grievance he filed and exhausted in 2006, but a 2006 grievance cannot possibly constitute exhaustion against all future treating doctors. A 2006 grievance that was completely exhausted by the time Dr. Henderson commenced treatment did not serve the purpose of putting the institution on notice of an ongoing problem with treatment, nor did it provide the institution an opportunity to internally address this issue over time. In light of the goals of the PLRA, and the fact that Toenniges had completely exhausted the 2006 grievance before seeing Dr. Henderson, he did not complete the grievance process as to Dr. Henderson.

**AFFIRMED.**[1]

---

[1]    Nevertheless, Appellant's motion to file an out-of-time reply brief is GRANTED.