NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0225n.06
Filed: March 30, 2006

No. 05-1546

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| RICHARD HENDERSON, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| Defendant-appellant. | ) | MICHIGAN |
| | ) | |
| | ) | |
| | ) | |

Before: GIBBONS, GRIFFIN and BRIGHT[*], Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge**.   Defendant-appellant Richard Henderson

appeals his conviction under 18 U.S.C. § 922(g)(1) of being a felon in possession of a firearm.  For

the following reasons, we affirm Henderson's conviction.

I.

On June 11, 2003, Detroit police officers Gregory Jones and Craig Stewart were patrolling

the Woodrow Wilson and Highland Street neighborhood in a semi-marked black "scout" car, in

response to complaints of loitering and narcotic sales outside of a party store in the area.  Jones and

---

[*]The Honorable Myron H. Bright, United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Stewart observed Richard Henderson standing on the sidewalk outside of the Lucky Liquor party store, drinking out of a forty-ounce bottle covered by a paper bag.

According to the officers' testimony at trial, Jones and Stewart exited the patrol car and approached Henderson because the officers observed the outline of what appeared to be a gun in Henderson's right pocket. As the officers approached Henderson, he fell to the ground and yelled, "Stop beating me," and "Don't beat me." The officers struggled with Henderson in an attempt to handcuff him, during which time Henderson removed a silver handgun from his right pocket and placed it on the ground. Jones kicked the gun under the scout car. The officers eventually detained Henderson, and Jones recovered the loaded gun from under the scout car.

Although there were people in the area, the officers testified at trial that there were no witnesses to the arrest. After Henderson was in custody and in the patrol car, Stewart talked with a woman at the scene. According to Stewart, the woman did not give her name but simply asked where Henderson was being taken. She was not asked if she saw what happened, and she did not state that she did. The police report indicated that there were no witnesses to the arrest.

Henderson was taken to the hospital by Stewart following his arrest. The hospital prisoner sheet, which Stewart filled out on the day of the arrest, indicated that Henderson was taken to the hospital because he has tuberculosis. The police arrest report indicated that Henderson suffered no injuries as a result of the arrest, and Stewart testified at trial that Henderson did not complain of any injuries following the arrest.

Henderson was indicted and charged with one count of being a felon in possession of a firearm following three serious felony convictions. During the week before trial, defense counsel

filed a motion to adjourn trial. The motion was based on defense counsel's failure to obtain potentially exculpatory evidence concerning the arrest and any witnesses to the arrest. The court did not rule on the motion to adjourn prior to the trial date. On the morning of trial, the district judge took up the motion to adjourn. At that time, defense counsel also orally moved to withdraw. Defense counsel informed the court that he had been unable to obtain allegedly valuable exculpatory evidence, that communication problems existed between him and Henderson, and that Henderson had asked him to withdraw. Although defense counsel admitted that he had not filed a motion to withdraw before trial, defense counsel noted that the he had filed the motion to adjourn, which, if granted, would allow him more time to obtain exculpatory evidence and repair any problems that had arisen in the attorney-client relationship. The district court denied both motions.

A jury trial was held on October 26, 27, and 28, 2004. At trial, the officers testified to the events of the arrest as described above. In addition, ATF agent Donald Dawkins offered expert testimony that the gun, which was manufactured in Springfield, Massachusetts, traveled in interstate commerce. Mary Gross, a Detroit Police evidence technician, testified that the recovered gun lacked usable fingerprints. The parties stipulated that Henderson had one prior felony conviction.

On October 28, 2004, the jury convicted Henderson of being a felon in possession of a firearm following three serious felony convictions. After the jury returned its guilty verdict on the felon in possession charge, the government submitted certified judgments of three prior serious felony convictions. On March 28, 2005, the district court sentenced Henderson to 235 months imprisonment. Henderson then filed a timely notice of appeal.

II.

3

On appeal, Henderson makes four arguments: first, his prosecution under the federal program, Project Safe Neighborhoods ("PSN" or the "program"), was unconstitutionally race-based; second, the district court's decisions to deny his requests for a continuance and for withdrawal of counsel were an abuse of discretion; third, trial counsel was constitutionally ineffective; and fourth, the evidence introduced at trial was insufficient to sustain his conviction. We examine each of these arguments in turn.

Henderson argues that PSN prosecutions in the Eastern District of Michigan unconstitutionally target minorities by focusing on a geographical location with a high minority population, thereby violating the equal protection and due process rights of those minorities prosecuted under the program. Henderson admits that 18 U.S.C. § 922(g)(1) is constitutional on its face. He challenges the enforcement of the statute in the Eastern District of Michigan through PSN. There is no statute that formally implements PSN. Instead, PSN is "a federal-state cooperative program...." *United States v. Mitchell*, 111 F. App'x 826, 828 (6th Cir. 2004). Henderson's claim is properly characterized as one of selective prosecution, notwithstanding the fact that Henderson challenges prosecutorial policy in the Eastern District of Michigan, as opposed to the decision to prosecute his individual case. *See, e.g., United States v. Armstrong*, 517 U.S. 456, 459-61 (1996) (analyzing selective prosecution claim which was brought based on evidence that all of the prosecutions for crack cocaine distribution handled by the Office of the Federal Public Defender involved African-American defendants); *United States v. Jones*, 287 F.3d 325, 332 (5th Cir. 2002) (analyzing a claim that the death sentence was applied in the case of the defendant because of a "systematic pattern of racial discrimination by the Attorney General of the United States" as one of

4

selective prosecution); *United States v. Bernal-Rojas*, 933 F.2d 97, 99 (1st Cir. 1991) (analyzing a claim that federal prosecutors "systematically refused to plea bargain with Colombian nationals, yet regularly reached agreements with otherwise similarly situated defendants" as one of selective prosecution).

Federal Rule of Criminal Procedure 12(b)(3)(A) requires that "a motion alleging a defect in instituting the prosecution" be raised pretrial. Failure to make such a pretrial motion results in waiver of the defense or objection; however, the Court may grant relief from the waiver for cause. Fed. R. Crim. P. 12(e). Henderson acknowledges that he did not raise his selective prosecution claim pretrial. Indeed, he did not raise the claim at all in district court. Because Henderson has not alleged that he was unaware of the factual predicate underlying his selective prosecution claim, Henderson's failure to argue selective prosecution to the district court precludes appellate review of this issue. *See United States v. Hayes*, 218 F.3d 615, 620 (6th Cir. 2000) ("Rule 12 requires certain claims and defenses...to be raised before trial, and provides that those claims and defenses are forfeited if they are not timely asserted."); *cf. United States v. Harris*, 293 F.3d 970, 976-77 (6th Cir. 2002) ("The failure to raise this Federal Rule of Criminal Procedure 12(b)(2) issue precludes review.").

Even if we reviewed Henderson's selective prosecution claim, we would reach the same result. At most, Henderson's constitutional claim would be reviewed for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). "To prevail on a selective prosecution claim, a defendant must show that the federal prosecutorial policy had both a

discriminatory effect and a discriminatory intent." *United States v. Jones*, 159 F.3d 969, 976-77 (6th Cir. 1998) (citing *Armstrong*, 517 U.S. at 465). "To establish discriminatory intent in a case alleging selective prosecution based on race, a claimant must show that the prosecutorial policy was motivated by racial animus; to establish discriminatory effect, the claimant must demonstrate that similarly situated individuals of a different race were not similarly prosecuted." *Id.* In this case, there is no record evidence that would tend to show either discriminatory intent or effect on the part of the government's prosecution of Henderson. There is no evidence regarding PSN, much less any evidence tending to point to the program's discriminatory administration – either in general or in regard to Henderson specifically. In short, based on the record in this case, Henderson's claim lacks merit.

Henderson next argues that the district court erred by denying defense counsel's motion for a continuance. A trial court's decision to deny a continuance is reviewed for an abuse of discretion. *United States v. Crossley*, 224 F.3d 847, 854 (6th Cir. 2000). When a continuance is denied, the defendant must demonstrate actual prejudice resulting from the denial; in other words, he must demonstrate that a continuance would have made relevant witnesses available or added something significant to the defense. *Id.* at 855.

The substantive basis for the motion to adjourn, as developed orally at trial, was that the defense might obtain exculpatory evidence in the following forms: (1) evidence concerning what Henderson was wearing on the day of the arrest; (2) records, including fingerprint cards, of Henderson's arraignment in state court; (3) the presence of witnesses to the arrest; and (4) medical records of Henderson's hospital treatment following his arrest. On appeal, Henderson focuses on

6

only the alleged presence of a female witness to the arrest and Henderson's hospital treatment following his arrest.[1]

With regard to potential witnesses, the district court's denial of the continuance was not an abuse of discretion because defense counsel told the district court that he had searched diligently for witnesses and that more time would not necessarily result in his finding any witness. Although Henderson believed that his friend, Melanie Howard, witnessed the arrest and the officers' trial testimony established that Stewart talked with an unidentified female at the scene, trial counsel represented to the district court that he had undertaken a variety of efforts to locate Howard and other witnesses. These efforts included checking Howard's last known address, looking for Howard at shelters and hospitals, and interviewing the owner of the party store. The district court found that trial counsel had exercised diligence in the search for Howard; this finding was not clearly erroneous. Indeed, in his brief to this court, Henderson admits that he has still not located Howard. Moreover, the district judge asked Henderson's counsel what benefit would result from an adjournment, and Henderson's counsel replied, "I can't offer the Court any further assurances that I'd have more success [than] I have [already had]." Finally, Henderson has not indicated in any specific manner how Howard or another eyewitness might have been helpful to his defense of the charge of felon in possession. In short, Henderson cannot show that he suffered any prejudice with regard to witnesses resulting from the denial of the continuance.

---

[1]The district court provided defense counsel an opportunity to view a videotape of Henderson's arraignment, during which he wore the same clothes that he was wearing when arrested, prior to trial. Defense counsel acknowledged at trial that the fingerprint cards had been provided.

Nor did the district court abuse its discretion by denying the continuance in light of the presence of medical records from Henderson's hospital visit. Defense counsel acknowledged that he was in possession of the hospital records prior to trial. On the first day of trial, however, the records had not been certified. Although defense counsel had requested the government to stipulate to their authenticity, it refused to do so. When the district court questioned the relevance of the hospital records, it became clear that the records contained potentially damaging evidence concerning Henderson's uncooperativeness at the hospital. At that point, the district court and defense counsel reached the following agreement: defense counsel would review the records to determine if he would like to use them; defense counsel, provided he decided to use the records, would try to have the records certified by the hospital; and, any relevance issues would be addressed at the time defense counsel sought to introduce the records. Proceeding to trial at that point was not an abuse of discretion. Ultimately, defense counsel did not seek introduction of the records at trial, most likely based on the strategic decision that the hospital records were more harmful than helpful. Moreover, Jones and Stewart testified that there was a struggle during the arrest, and Stewart testified that Henderson was taken to the hospital following his arrest. Henderson has not articulated what more the hospital records would show or how the records would aid in the defense of the felon in possession charge; therefore, Henderson has not shown that any prejudice resulted from the failure to have the records authenticated.

Henderson also claims on appeal that the district court abused its discretion when it denied trial counsel's oral motion to withdraw and continue the trial in order to allow for Henderson to locate substitute counsel. A motion for a continuance in order to effectuate a substitution of counsel

is reviewed for an abuse of discretion. *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004). "A defendant is required to show good cause for a request to substitute counsel and to do so in a timely manner." *United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999). Upon review of the denial of such a motion, this court should examine four factors: (1) the timeliness of the motion; (2) the adequacy of the district court's inquiry into the matter; (3) the extent of the conflict between the attorney and client and whether it resulted in a total lack of communication; and (4) a balancing of the first three factors and the accused's right to counsel of his choice with the public's interest in the prompt and efficient administration of justice. *Trujillo*, 376 F.3d at 606; *see also Williams*, 176 F.3d at 314; *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

In this case, all four factors weigh in favor of the denial of the motion. The request for withdrawal was not made until the morning of trial and, as the district judge noted, defense counsel had not conveyed in any of the pre-trial discussions that problems existed which would warrant an adjournment or a motion to withdraw. The district court diligently investigated the matter, discussing the defendant's complaints with both the defendant and defense counsel. Moreover, the record does not indicate that there was a real lack of attorney-client communication. Rather, Henderson's conflict with his counsel resulted from counsel's failure to file motions on issues that counsel felt were unsupported and counsel's failure to pursue evidentiary leads that might build a record of harmful facts. Finally, the weight of the first three factors did not overcome the interest in the prompt and efficient administration of justice, especially since Henderson's trial had already been adjourned three times.

9

Henderson next argues that trial counsel was constitutionally ineffective. Henderson supports his ineffective-assistance claim by identifying five shortcomings of trial counsel: (1) the failure to find Melanie Howard and other witnesses; (2) the failure to introduce hospital records of Henderson's injuries arising from the arrest; (3) the failure to object to the government's elicitation of opinion testimony from Jones; (4) the failure to successfully introduce photographic evidence of the scene; and (5) the failure to challenge the constitutionality of PSN.

Ordinarily, this court declines to review ineffective assistance of counsel claims on direct appeal. *United States v. Galloway*, 316 F.3d 624, 634 (6th Cir. 2003); *United States v. Shabazz*, 263 F.3d 603, 612 (6th Cir. 2001). This rule stems from the lack of a sufficient record to evaluate such a claim on direct appeal given the requirement that the defendant show prejudice to succeed on such a claim. *Galloway*, 316 F.3d at 634. As a result, unless the record is adequate to permit a review of counsel's performance on direct appeal, this court usually requires that an ineffective assistance claim be brought through a post-conviction proceeding under 28 U.S.C. § 2255. *Id.* In Henderson's case, the record is insufficient to effectively evaluate whether trial counsel's alleged failures prejudiced Henderson's defense in any meaningful way. The record contains no evidence concerning PSN generally or as applied to Henderson. There is no evidence in the record concerning federal counsel's trial strategy. The hospital records are not in the record. There is no testimony from Melanie Howard in the record, nor any evidence as to what she might have specifically testified. Neither the photograph of the scene nor any description of what that photograph shows is in the record. For those reasons, we adhere to the general rule and decline to review Henderson's ineffective assistance claim on direct appeal.

10

We now turn to the sufficiency of the evidence. At the close of the prosecution's case and again at the close of the case, the defense made a Rule 29 motion for acquittal, arguing that the officers' testimony was inherently incredible and that there was insufficient evidence introduced by the prosecution to support a conviction. Both motions were denied. A Rule 29 motion is a challenge to the sufficiency of the evidence. *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996). On appeal, we will reverse the jury's conviction only if, when viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones*, 102 F.3d at 807. We "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998).

According to Henderson, the testimony of the only two witnesses at trial – the officers – was in conflict. Jones testified that Henderson removed and dropped the gun. Stewart testified that he did not see the gun until Jones had recovered it from under the patrol car. To the extent that Henderson's argument depends on the determination that the officers' testimony was incredible, we will not disturb the jury's determination that these officers were credible. *See Jackson*, 443 U.S. at 319 (noting that the trier of fact has the responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Their testimony, moreover, does not conflict. As the district court found, both officers actually identified Henderson as possessing a gun, although only Jones testified that he saw Henderson handling the gun. Although Henderson also argues that there were no fingerprints on the gun, the lack of fingerprints on the gun does not negate the officers' testimony.

11

III.

For the foregoing reasons, we affirm Henderson's conviction.