**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0780n.06

No. 07-3444

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 10, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| RICHARD AUSTON, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Before:  MOORE and KETHLEDGE, Circuit Judges; and BERTELSMAN,[*] District Judge.

**KAREN NELSON MOORE, Circuit Judge.**  Defendant Richard Auston appeals his criminal conviction and sentence following a jury trial in the United States District Court for the Southern District of Ohio.  Auston claims that the Government's decision to indict him in Ohio after two mistrials in Washington, D.C. was motivated by a desire to decrease the number of African Americans on the petit jury.  Auston further claims that his sentence of 180 months of imprisonment was procedurally and substantively unreasonable.  Because Auston has waived his venue-based constitutional challenge, and because his below-Guidelines sentence was reasonable, we **AFFIRM** the judgment of the district court.

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

# I.  BACKGROUND

A jury in the Southern District of Ohio convicted Auston of conspiracy to distribute and possess with intent to distribute more than 150 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(a), and 846, as well as one count of engaging in interstate travel in furtherance of an illegal activity in violation of 18 U.S.C. § 1952.  The district court sentenced Auston to 180 months of imprisonment and 5 years of supervised release on the conspiracy charge.  Auston received a sentence of 60 months of imprisonment and 3 years of supervised release on the interstate-travel charge, which the district court ordered to run concurrently with the conspiracy sentence.

The Ohio-based verdict and sentence was the culmination of the Government's repeated effort to prosecute Auston for conduct arising out of his participation in an extensive, nationwide drug-trafficking conspiracy.  In fact, the Government had tried the case previously to two different juries in the United States District Court for the District of Columbia.  Auston's first trial in Washington, D.C. began in November 2002 and ended in a mistrial as a result of the jury's failure to reach a unanimous jury verdict in May 2003.  The jury in the second federal trial acquitted Auston of one of the charged counts and was unable to reach a verdict on the remaining counts.  Following the hung juries in Washington, D.C., the Government decided to reindict Auston and several codefendants in the Southern District of Ohio.

Prior to the commencement of proceedings in Ohio, Auston's codefendant, Ronald Taylor, filed a motion to dismiss the action based, in relevant part, on improper venue.  Specifically, Taylor alleged that the reindictment in federal court in Ohio deprived him of proper representation by his D.C.-based counsel and that "indicting him for a third time in a more desirable district is blatant forum shopping and slaps in the face of fair play."  Mot. to Dismiss of 7/14/06, at 4 (Doc. 163).

2

Auston joined that motion. The district court denied the motion to dismiss, concluding that an "examination of the offenses set forth . . . in the Superseding Indictment cause[d] the Court to conclude that the Government . . . adequately alleged venue for each of those offenses." Dist. Ct. Order of 7/31/06 at 4-5 (Doc. 179). This conclusion was based on the fact that there were "a number of overt [criminal] acts . . . in the Southern District of Ohio." *Id.*

The trial commenced. The evidence at trial, viewed in the light most favorable to the jury's verdict, established that Auston worked as a drug courier for a drug-trafficking organization run by Taylor. Auston solicited employment with the organization to make extra money. During his involvement, Auston drove cocaine shipments across the country in a variety of sport-utility vehicles and trucks, returning cash payments for those transactions back to Taylor, who was the head of the organization. Cooperating government witness, Harris, who oversaw the loading of the drug shipments into the transport vehicles and met up with the couriers once they arrived at their destinations, testified that Auston made approximately six trips for the conspiracy. These trips included "about" three to Dayton, Ohio and "around" three to Washington, D.C., during the first four months of 2001. Harris Test., Hr'g Tr. of 8/30/06, at 1561-62 (Doc. 219).

In April 2001, the organization orchestrated its largest cocaine shipment. Auston and a female courier were in charge of driving a truck loaded with 63 kilograms of cocaine in a secret compartment to Dayton, Ohio. Once in Dayton, they met up with Harris and distributed 33 kilograms of cocaine to their contact, Wright. Auston removed the cocaine from the secret compartment while Harris stacked and organized it. Ultimately, Harris and Auston provided an additional 30 kilograms of cocaine to Wright because their other contact fell through. A few days after the initial drug sale, Harris and Auston remained in Ohio. Wright called Harris to inform him

3

that the drugs Harris and Auston had delivered had been stolen, and Wright identified the likely culprit. Harris and Auston agreed to help Wright go after the responsible party, and Auston drove to a car wash where the culprit was located. Auston, Harris, and Wright considered abducting the culprit, but ultimately decided not to confront him. During this time, Auston was in possession of a firearm that Wright had provided him. Auston left Ohio and returned to Los Angeles. Eventually, he was arrested.

## II. ANALYSIS

On appeal, Auston challenges both his conviction and his sentence. Auston, an African American, argues that the Government violated his Fifth Amendment right to equal protection by basing its decision to indict him in federal court in Ohio on the "racial composition of the potential jury pool" and that its "choice of venue was predicated on a scheme to reduce the number of African Americans on the jury." Def. Br. at 16. Auston thus advocates that the Government's selection of venue should be analyzed under *Batson v. Kentucky*, 476 U.S. 79 (1986), and that a proper analysis establishes a prima facie case of purposeful discrimination. Auston further argues that "the district court erred by not requiring the government to place on the record its race neutral reasons for prosecution in Ohio" sua sponte because the reindictment in Ohio clearly established, in his view, that the Government was motivated by a racially discriminatory purpose. Def. Br. at 16-17. Auston also challenges the reasonableness of his sentence. For the following reasons, we find Auston's arguments unavailing.

4

## A. *Batson*-Related Venue Claim Was Waived

Auston has waived his race-based venue challenge, and we are precluded from reaching the merits of that claim. Federal Rule of Criminal Procedure 12(b)(3) mandates that a defendant raise before trial "a motion alleging a defect in instituting the prosecution." Fed. R. Crim. P. 12(b)(3). Under Rule 12(b)(3), the failure to raise before trial an objection to a defect in the institution of the prosecution waives that objection. Fed. R. Crim. P. 12(e). "For good cause, [however,] the court may grant relief from the waiver." *Id.* Although this circuit has not previously applied Rule 12 in the context of a challenge to venue, we have held that Rule 12 is sufficient to cause waiver of claims on appeal in analogous circumstances. For example, a panel of this court has determined that Rule 12 "governs an untimely claim of discrimination" in the selection of the grand jury or the petit jury, even when those challenges are made on constitutional grounds. *See United States v. Ovalle*, 136 F.3d 1092, 1107 (6th Cir. 1998). Moreover, two panels of this court in unpublished cases have applied Rule 12(b)(3) to selective-prosecution challenges, including a case where the defendant argued for the first time on appeal that his constitutional rights were violated because the prosecutor's decision to refer him for federal prosecution was race based. *United States v. Brimite*, 102 F. App'x 952, 955 (6th Cir. 2004) (unpublished); *see also United States v. Henderson*, 174 F. App'x 880, 882-83 (6th Cir. 2006) (unpublished). We conclude that venue-selection challenges, such as the race-based challenge that Auston raises on appeal, likewise implicate Rule 12(b)(3).

The pre-trial motion to dismiss based on venue, which Auston joined, at no point challenges the reindictment in federal court in Ohio as being race-based, despite specifically listing other potential problems with the retrial. The motion suggests that a third trial was unfair or excessive, but nothing in the motion put the district court on notice of a contention that the decision to indict

5

in Ohio was an attempt to reduce the number of African Americans in the jury pool. For this reason we also decline to hold that the district court had an independent obligation to require the Government to articulate a race-neutral reason for its decision to prosecute the case in Ohio. There was nothing to call to the district court's attention the now-asserted problem, and we cannot conclude on this record that prosecution in the Southern District of Ohio, after a hung jury elsewhere, is so fundamentally unfair to African-American defendants that the district court should have been on notice.

Auston alternatively asserts that even if his "objection to prosecution in the Southern District of Ohio was not specifically predicated on improper racial considerations, the issue raised on appeal should nevertheless be reviewed for plain error" because of the potential for grave injustice. Def. Br. at 17. This argument is also unavailing. Although we possess authority under Rule 12(e) to grant relief from waiver, Auston has presented no "good cause" for his failure to present his race-based venue-selection claim to the district court either before trial, as required by Rule 12, or even during trial. Fed. R. Crim. P. 12(e); *see Ovalle*, 136 F.3d at 1107 (noting that relief from waiver in grand- and petit-jury challenges is appropriate only where there is a finding of "cause and actual prejudice" (quotation omitted)). Auston has not claimed that he was "unaware of the factual predicate underlying" his claim. *Henderson*, 174 F. App'x at 883. Nor has Auston presented this court (or the district court, for that matter) with any information that would excuse his failure to object to what he perceives as unconstitutional race-based conduct, despite the fact that he filed numerous motions challenging his prosecution in Ohio, both with the assistance of counsel and pro

6

se.[1]  As a result of Auston's failure to object in a timely manner to venue in the Southern District of Ohio for race-based reasons as well as his failure to present *any* cause for that failure on appeal, his venue claim has been waived.  *See United States v. Brown*, 498 F.3d 523, 528 (6th Cir. 2007) ("This Court strictly applies Rule 12(b), and has repeatedly held that failure to raise 12(b) motions in a timely fashion precludes appellate review." (quotation omitted)).[2]

## B.  Sentence Is Procedurally and Substantively Reasonable

Auston also challenges the reasonableness of his sentence.  The district court sentenced Auston based on a total offense level of 40 and a criminal-history category of one, which yielded a recommended Guidelines range of 292 to 365 months of imprisonment.  This calculation was premised on a finding that Auston possessed at least 150 kilograms of cocaine (base offense level of 38) plus a two-level increase for possession of a firearm.  Sent. Hr'g Tr. at 9-10 (Doc. 320).  Ultimately, the district court sentenced Auston to 180 months of imprisonment.

In reviewing for reasonableness, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."  *Gall v. United*

---

[1]We note that Auston also filed in the district court a motion to dismiss under 28 U.S.C. § 1867 on the basis of the jury panel's racial composition as compared to the general population. Def. Apx. at 9.  Again, as with Auston's and his codefendants' other motions, this motion fails to assert the contention that the Government's venue selection was race based, and it does not support Auston's claim on appeal that he raised his venue challenge in the district court.

[2]Because Auston has waived his ability to challenge venue selection on appeal, we deny his motion to submit as allied paper an affidavit of Auston's trial counsel detailing the petit-jury composition.

*States*, 552 U.S. 38, 51 (2007). If a district court errs in calculating the Guidelines, we must remand for resentencing unless the error did not affect the sentence. *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008). If there is no procedural error, then we consider whether the sentence is substantively reasonable under an abuse-of-discretion standard of review. *Id.* For the reasons below, we conclude that Auston's sentencing arguments are without merit.

### 1. Sentence Is Procedurally Reasonable

Auston's first challenge to the procedural reasonableness of his sentence is that the district court improperly calculated the Guidelines range. Specifically, Auston argues that the district court incorrectly calculated the drug quantity involved in his crime and that the proper amount was between 50 and 150 kilograms of cocaine, not an amount greater than 150 kilograms as the district court found. Under U.S. Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(1), if Auston's offense involved the lesser amount, the base offense level would have been 36, as opposed to 38, which would have resulted in a lower Guidelines range. We review a determination of drug quantity for clear error. *Jeross*, 521 F.3d at 570. The district court's fact finding must be supported by a preponderance of the evidence. *Id.* The district court is authorized to rely on both physical evidence and testimonial evidence to establish the appropriate quantity. *Id.* "Testimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable." *Id.* (quotation and alteration omitted).

In this case, a preponderance of the evidence supports the district court's finding that Auston was responsible for a quantity of cocaine greater than 150 kilograms. Coconspirator testimony from Harris established that Auston made "about" three deliveries to Dayton, Ohio and "around" three deliveries to Washington, D.C. during his involvement in the conspiracy. Harris Test., Hr'g Tr. of

8

8/30/06, at 1561-62 (Doc. 219). Harris testified that the average shipment size for each trip to Washington, D.C. was not under 35 kilograms and that the average shipment size for Dayton, Ohio was "about 35" kilograms. Harris Test., Hr'g Tr. of 9/6/06, at 2085-86 (Doc. 211). At least one of those shipments to Dayton involved 63 kilograms of cocaine. Given these estimates, a preponderance of the evidence supports the conclusion that Auston was personally responsible for transporting over 150 kilograms of cocaine.

Auston next challenges the district court's Guidelines calculation by arguing that he deserved a reduction in his offense level for being a minor or minimal participant in the drug conspiracy under U.S.S.G. § 3B1.2. "Whether a defendant is entitled to a downward offense-level adjustment under U.S.S.G. § 3B1.2 depends heavily on factual determinations" by the district court, which this court reviews for clear error. *United States v. Bailey*, 488 F.3d 363, 369 (6th Cir. 2007) (quotation omitted). Auston "has the burden of proving by a preponderance of the evidence that he is entitled to the reduction." *Id.* "Defendants may be minimal or minor participants in relation to the scope of the conspiracy as a whole, but they are not entitled to a mitigating role reduction if they are held accountable only for the quantities of drugs attributable to them." *Id.* at 369-70 (quotation omitted).

The district court did not err in denying Auston a minor-role adjustment. Although the evidence indicates that Auston, as a courier, was a relatively small player in a much larger criminal enterprise, the district court did not clearly err in finding that Auston was himself involved with over 150 kilograms of cocaine and personally delivered that quantity to at least two locations throughout the United States. Thus, despite the fact that Auston may have been a "minor participant[] in relation to the scope of the conspiracy as a whole," he was not entitled to the reduction under § 3B1.2

9

because the district court held him accountable only for the quantity that he transported. *Bailey*, 488 F.3d at 369-70.[3]

Auston additionally claims that the district court erred in failing to consider his age and deteriorating health as a "legitimate basis for downward departure." Def. Br. at 29. The record clearly contradicts this claim. During sentencing, the district court repeatedly discussed Auston's age and health as part of its consideration of the § 3553(a) factors and in determining whether a below-Guidelines sentence would be appropriate.

Auston's final claim of procedural error—made without citation to the record—is that the district court was constrained by this circuit's pre-*Gall* proportionality test and that the district court believed that the Sixth Circuit would reverse on appeal a greater downward variance from the Guidelines range. Although Auston was sentenced on April 2, 2007, more than six months before the Supreme Court's decision in *Gall v. United States*, a thorough review of the sentencing materials indicates that the district court was well aware that it was entitled to vary below the recommended Guidelines range and did not believe it was constrained. *See* Sent. Hr'g Tr. of 2/05/07, at 14 (Doc. 319). First, Auston's 180-month sentence was 112 months below the bottom of the recommended Guidelines range. Moreover, at no time did the district court indicate that its 112-month variance (or any further variance) would need extraordinary justifications. The district court did not cite Sixth Circuit case law employing a proportionality test or indicate that it was unclear about the extent of its discretion. To the contrary, in fact, the record indicates that the district court went to great lengths

---

[3]Auston also argues that he merited a "downward adjustment of up to 4 levels . . . through Section 2D1.1(a)(3) for defendants who receive a downward adjustment based upon a mitigating role." Def. Br. at 27. The denial of a reduction under § 3B1.2, however, made him ineligible for a reduction under § 2D1.1(a)(3), which explicitly requires that the defendant have received an adjustment for a mitigating role under § 3B1.2. U.S.S.G. § 2D1.1(a)(3).

to ensure that Auston had the benefit of its sentencing discretion, which it considered ample, even informing Auston that he would be well-advised to allow the Probation Office to obtain more information about his background because the more information the district court had "about [Auston], the better job [it could] do in imposing . . . a fair sentence." *Id.* at 24. The district court also postponed the final sentencing to allow Auston to sign the proper releases so that the Probation Office could file an amended Presentence Investigation Report with all the relevant information. In sum, the record contains nothing, whether it be a statement or an implication, upon which Auston can base his claim that the district court felt constrained by Sixth Circuit pre-*Gall* precedent.

In conclusion, the district court did not commit procedural error by improperly calculating the recommended Guidelines range or in failing to consider Auston's health or age. And, for the reasons discussed above, Auston's sentence was procedurally reasonable.

## 2. Sentence Is Substantively Reasonable

Auston's final argument on appeal is that his sentence was substantively unreasonable because the district court awarded lower sentences to "much more culpable co-conspirators and co-operating witnesses," and thereby created an unwarranted sentencing disparity. Def. Br. at 23. The record in this case not only fails to support Auston's argument, but it completely undermines his claim. The district court carefully considered issues of disparate sentencing before determining what sentence was appropriate for Auston. In analyzing specifically whether a within-Guidelines sentence would create an unwarranted sentencing disparity, the district court noted that, among the § 3553(a) factors, it was the "disparity prong that g[ave] the Court the most significant pause." Sent. Hr'g Tr. of 4/02/07, at 16 (Doc. 320). The court then detailed its concern over having given drug kingpins lesser sentences in previous cases, and ultimately concluded that adhering to the Guidelines "would

11

[create] an unreasonable disparity," *id.* at 17, with regard to not only Auston's "two codefendants . . . , but . . . also [with] . . . the universe of drug couriers that ha[d] come before th[e] Court in the past." *Id.* at 13. The record thus clearly reflects that the district court granted Auston such a significant variance in part because of a fear of creating a disparity.

Although Auston points out that several coconspirators received lesser sentences than he did, he fails to acknowledge that all the people whom he identified as "more culpable" cooperated with the Government throughout the case. Auston does not dispute that he did not provide such cooperation or otherwise assist the Government. Thus, the proposed comparators were not similarly situated. *See United States v. Dexta*, 470 F.3d 612, 616 n.1 (6th Cir. 2006) (finding a disparity between coconspirators "reasonable because [the] co-conspirators chose to plead guilty and cooperate with the prosecution" while the defendant did not). Because the record belies Auston's claim that the district court failed to recognize potential sentencing disparities, we conclude that the district court did not abuse its discretion, and Auston's sentence is reasonable.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.