**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0460n.06

**No. 13-5983**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 27, 2014
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff-Appellee,<br><br>v.<br><br>SANDRA E. PARLIER,<br><br>  Defendant-Appellant. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |

**BEFORE:** NORRIS, CLAY, and KETHLEDGE, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Sandra E. Parlier was convicted of conspiring to manufacture 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). Defendant directly appeals and challenges her conviction arguing: (1) that the government did not carry its burden to establish that venue was proper; (2) that the district court committed plain error in admitting several statements that were prejudicial to Defendant's right to a fair trial; and (3) that the evidence presented by the government at trial varied from the allegation in the indictment. For the reasons set forth below, we **AFFIRM** Defendant's conviction of conspiring to manufacture 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A).

**BACKGROUND**

In 2008, Detective Patrick Anderson began investigating methamphetamine manufacturing in North Carolina and Tennessee. His investigation identified over twenty alleged co-conspirators, including Defendant; and produced records showing purchases of more than 1,600 grams of pseudoephedrine, a necessary ingredient for manufacturing methamphetamine that resulted in the production of 800 grams of methamphetamine.

Although there are several methods for manufacturing methamphetamine, all of them require the use of pseudoephedrine. Pseudoephedrine is generally not purchased directly by those manufacturing methamphetamine, but rather by individuals who receive either money or finished methamphetamine in exchange for providing pseudoephedrine. In Tennessee and North Carolina, law enforcement tracks the purchase of pseudoephedrine in pharmacies to ensure that individuals do not purchase more than 3.6 grams within a 24-hour period or more than 9 grams in a single month. All of the alleged co-conspirators, including Defendant, purchased pseudoephedrine at or below the relevant legal maximums.

Detective Anderson testified that he initially received information from co-defendant Angela Auton-Miller, who identified co-defendant Tommy Ward as the person for whom the co-conspirators were buying pseudoephedrine and from whom they received methamphetamine. On cross-examination, Detective Anderson stated that his investigation had not led to the discovery of a methamphetamine lab on anyone's property; however, when asked whether Defendant's property was searched, Anderson indicated that it had been searched a couple of years ago in regards to another instance, but nothing was found. Detective Anderson acknowledged that nothing incriminating was found at Defendant's home at the time of her arrest.

Co-defendant Tommy Ward testified that he had manufactured two kilograms of methamphetamine over a period of ten to twelve years. He admitted that Defendant's property in North Carolina was among the places he manufactured methamphetamine, but denied manufacturing it in Tennessee. Ward said that he manufactured methamphetamine using pseudoephedrine he obtained from more than ten different people, including Defendant, and usually traded methamphetamine for the pills.

Ward acquired the chemicals, iodine, matches, and pseudoephedrine needed to manufacture methamphetamine from Defendant while living with her and manufacturing the methamphetamine in a garage behind her home. In exchange, Ward provided Defendant with methamphetamine for her own use. DEA Special Agent Edward Hammett testified that pharmacy records showed that Defendant purchased pseudoephedrine every month from August 21, 2007, to March 19, 2012.

Several co-defendants testified that they saw Defendant purchase pseudoephedrine in exchange for methamphetamine. In particular, co-defendant Jackie Roten stated that she accompanied Defendant on more than ten occasions when she purchased pseudoephedrine pills and took those pills to her brother, co-conspirator Charles Parlier, who lives in Tennessee, in exchange for methamphetamine. Similarly, co-defendant James Trivette testified that when Ward was not at the residence, he instead gave boxes of pseudoephedrine to Defendant who would take those pills to Charles Parlier in Tennessee in exchange for methamphetamine.

On April 10, 2012, a federal grand jury charged Defendant with conspiring to manufacture 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). Pursuant to an arrest warrant, Defendant was arrested on May 8, 2012. After being taken into custody and receiving her *Miranda* warnings, Defendant admitted that she

used methamphetamine regularly and that she purchased pseudoephedrine at least once a week for seven to eight years for Ward in exchange for methamphetamine. On November 6, 2012, Defendant was convicted as charged. Subsequently, the district court sentenced Defendant to 135 months imprisonment. Defendant did not file a motion for a judgment of acquittal but rather makes a timely direct appeal.

## DISCUSSION

### I.    Defendant failed to show that venue was improper

#### *Standard of Review*

Typically, this court reviews challenges to venue raised in the district court *de novo*. *United States v. Zidell,* 323 F.3d 412, 420 (6th Cir. 2003). We review for abuse of discretion a district court's decision whether to dismiss or transfer a complaint for improper venue. *United States v. Poulsen*, 655 F.3d 492, 506 (6th Cir. 2011). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, uses an incorrect legal standard, or applies the law incorrectly." *United Food & Commercial Workers Union, Local 1099 v. S.W. Ohio Reg'l Transit Auth.,* 163 F.3d 341, 347 (6th Cir. 1998). However, because Defendant did not raise her venue objection in the district court, this Court reviews only for plain error, "requiring an error that is clear or obvious, affecting a defendant's substantial rights, and seriously affecting the fairness, integrity or public reputation of judicial proceedings." *United States v. Lopez-Medina,* 461 F.3d 724, 746 (6th Cir. 2006). Defendant fails to show error, plain or otherwise.

#### *Analysis*

We conclude that Defendant forfeited her right to challenge venue, and even if she had not, venue was proper in the Eastern District of Tennessee. Defendant argues that the government did not carry its burden of establishing proper venue. A criminal defendant may waive her sixth amendment venue rights by an express waiver, a motion to transfer, or by

inaction. *United States v. Adams*, 803 F.2d 722, at *8 (6th Cir. 1986) (Table). Objections to defects in venue are "waived if not asserted before trial" unless "the defect is not 'apparent on the face of the indictment,' and the defendant does not have notice of the defect through other means." *United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005) (internal citations omitted). In determining whether a defendant waived an objection to venue, "the inquiry should not center on whether the indictment was defective on its face, but rather on the question of whether the defendant had notice of the defect before trial." *Adams*, 803 F.2d 722, at *9. While such notice can obviously be obtained from a defective indictment, it can also be obtained from other sources. *Id*.

In this case, the indictment alleged that Defendant committed the conspiracy offense in the Eastern District of Tennessee and, thus, did not itself put Defendant on notice of a possible defect in venue. However, Defendant had notice of a possible defect well before trial. Defendant knew that she had purchased numerous boxes of pseudoephedrine only in North Carolina, not in Tennessee. Accordingly, under Federal Rule of Criminal Procedure 12, Defendant had a duty to raise her venue objection before trial. *See* Fed. R. Crim. P. 12(b)(3) (indicating that a motion alleging a defect in instituting the prosecution must be raised before trial); *United States v. Auston*, 355 F. App'x 919, 923 (6th Cir. 2009) (finding that venue-selection challenges implicate Rule 12(b)(3) and must be raised before trial); *Adams*, 803 F.2d 722, at *9 (finding that, because defendant knew before trial that the prosecution was proceeding on the basis of his possession of heroin outside of the forum district, he "had a duty to raise the issue prior to trial under Rule 12"). By failing to raise the venue objection before trial in this case, Defendant waived that objection.

In addition, a preponderance of evidence demonstrates that venue in the Eastern District of Tennessee was proper. *Zidell,* 323 F.3d at 420–21 (explaining that the government's showing of venue "need only be supported by a preponderance of the evidence"). Under 18 U.S.C. § 3237(a), any federal offense "begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

In a conspiracy prosecution, venue is proper in any district where the agreement was formed or in any district where an overt act in furtherance of the conspiracy was committed. *Zidell*, 323 F.3d at 421–25 (affirming venue in Tennessee where defendants transporting drugs from Texas were arrested on their way back to Tennessee.) Furthermore, venue is proper in any district where a co-conspirator committed an overt act in furtherance of the conspiracy even if the defendant never entered that district. *United States v. Croizer*, 259 F.3d 503, 519 (6th Cir. 2001). The evidence presented at trial demonstrated that Defendant purchased pseudoephedrine pills in North Carolina and transported some of those pills to Tennessee in order to obtain methamphetamine from her brother, co-conspirator Charles Parlier. (R. 322, Trial Tr. at 1156–57, 1182–83.) As a result, venue was proper in this case.

## II.     Variance between the indictment and evidence

### *Standard of Review*

Generally, this Court evaluates claims of variances from an indictment *de novo. United States v. Hynes,* 467 F.3d 951, 961 (6th Cir. 2006); *United States v. Flowal,* 163 F.3d 956, 962 (6th Cir. 1998). However, where no specific objection is raised regarding a variance before the district court, we are limited to "plain error" review on appeal. *United States v. Caver,* 470 F.3d 220, 235 (6th Cir. 2006) (plain error review applied to variance appeal). To establish plain error, "there must be (1) error, (2) that is plain, (3) that affects substantial rights. If all three conditions

are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Webb,* 403 F.3d 373, 380 (6th Cir. 2005) (internal citations, quotations, and alterations omitted). The defendant bears the burden of proving that a variance has occurred. *United States v. Chilingirian,* 280 F.3d 704, 712 (6th Cir. 2002).

## *Analysis*

Defendant argues that the evidence presented at trial failed to correspond to the indictment, but rather, established the existence of two separate conspiracies, one in North Carolina and one in Tennessee. Defendant contends that she bought pseudoephedrine in North Carolina and Ward manufactured methamphetamine in North Carolina. Thus, any allegations associated with the state of Tennessee involve a separate conspiracy, contrary to the indictment which alleged a single conspiracy. However, contrary to Defendant's claim, the evidence presented at trial established a single conspiracy that spanned two states.

An allegedly fatal variance is "a theory of error often raised but seldom seen." *United States v. Williams*, 612 F.3d 417, 423 (6th Cir. 2010). "If an indictment alleges one conspiracy, but the evidence can reasonably be construed *only* as supporting a finding of multiple conspiracies, the resulting variance between the indictment and the proof is reversible error if the appellant can show that he was prejudiced thereby." *United States v. Warner*, 690 F.2d 545, 548 (6th Cir. 1982) (emphasis added); *see also United States v. Budd*, 496 F.3d 517, 521–22 (6th Cir. 2007) (reiterating that, to obtain relief, a defendant must establish both the existence of a variance and that it affects one or more of his substantial rights). Whether "single or multiple conspiracies have been shown is usually a question of fact to be resolved by the jury under proper instructions and to be considered on appeal in the light most favorable to the

government." *United States v. Rios*, 842 F.2d 868, 872 (6th Cir. 1988) (internal quotation marks omitted).

To establish a single conspiracy, the government needed to show that the co-conspirators agreed to participate in what they "knew to be a collective venture directed toward a common goal." *Id.* at 873 (internal quotation marks omitted). A conspiracy does not become multiple conspiracies "simply because each member . . . did not know every other member, or because each member did not know of or become involved in all of the activities in furtherance of the conspiracy." *Id.* (internal quotation marks omitted). Also, the existence of multiple suppliers or distributors does not result in multiple conspiracies. *United States v. Sophie*, 900 F.2d 1064, 1081 (7th Cir. 1990) (rejecting an argument that multiple conspiracies existed because there were different suppliers involved at different times).

At trial, several co-defendants testified that they traveled with Defendant as she delivered pseudoephedrine from North Carolina to Tennessee in exchange for methamphetamine. In particular, co-defendant Jackie Roten stated that she accompanied Defendant on more than ten occasions when she purchased pseudoephedrine pills and took those pills to her brother, co-conspirator Charles Parlier, who lives in Tennessee, in exchange for methamphetamine. Similarly, co-defendant James Trivette testified that when co-defendant Tommy Ward was not at the residence, he instead gave boxes of pseudoephedrine to Defendant who would then take those pills to Charles Parlier in Tennessee in exchange for methamphetamine.

That Tommy Ward and Charles Parlier may not have personally interacted with each other or with all the other co-conspirators does not mean that they were not part of the same conspiracy or that multiple conspiracies existed; the fact that Defendant, Jackie Roten, and James Trivette engaged in the same criminal activity in relation to Tommy Ward and Charles Parlier

strongly suggests that a single conspiracy existed. *Caver*, 470 F.3d at 236 (concluding that the jury could reasonably find a single conspiracy despite infrequent or nonexistent direct contacts between co-conspirators).

When viewed in the light most favorable to the government, it cannot be said that "the evidence can reasonably be construed only as supporting a finding of multiple conspiracies." *Warner*, 690 F.2d at 548. Rather, the evidence revealed one large conspiracy to manufacture methamphetamine that involved multiple people who performed different tasks on multiple occasions in two states.

**III.     Admission of Detective Anderson's testimony**

### *Standard of Review*

Because Defendant failed to object in district court to Detective Anderson's testimony, we review for plain error. Plain error occurs when there is an "(1) error (2) that was obvious or clear; (3) that affected defendant's substantial rights; and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner,* 516 F.3d 382, 386 (6th Cir. 2008) (internal quotation marks and citations omitted). To establish plain error, Defendant must first show there was an error. *United States v. Marcus,* 560 U.S. 258, 262–63 (2010). Errors that do not materially affect the verdict must be deemed harmless. *United States v. Mackey*, 265 F.3d 457, 463 (6th Cir. 2001). "The 'plain error' doctrine is to be used sparingly, only in exceptional circumstances and solely to avoid a miscarriage of justice." *United States v. Carney,* 387 F.3d 436, 453 (6th Cir. 2004) (internal quotation marks and citations omitted).

### *Analysis*

Defendant argues that testimony given by Detective Anderson about dangers associated with the manufacture of methamphetamine was not relevant to the question of Defendant's guilt, and that, even if relevant, its probative value was substantially outweighed by the dangers of

unfair prejudice and misleading the jury.  The burden to show that the error was prejudicial is on

Defendant.  *United States v. Stewart*, 306 F.3d 295, 322 (6th Cir. 2002).

Detective Anderson testified primarily as an expert witness about the methods of

methamphetamine manufacturing.  Federal Rule of Evidence 702 permits a court to admit

testimony of "specialized knowledge [if it] will help the trier of fact to understand the evidence

or to determine a fact in issue" where the witness is "qualified as an expert by knowledge, skill,

experience, training, or education."  This Court has recognized that it "regularly allows qualified

law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate

cautionary instructions are given, since knowledge of such activity is generally beyond the

understanding of the average layman."  *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir.

2004) (agent testified about practices of methamphetamine distribution) (internal quotation

marks omitted).  It is expected that the average trier of fact does not have any knowledge of the

manufacture of methamphetamine, and the court did instruct the jury as to the testimony of an

opinion witness.

Defendant's substantial rights were not affected by the admission of this testimony.  The

jury heard from numerous co-defendants who testified that Defendant participated in the

conspiracy by purchasing and providing pseudoephedrine and other items which were used to

manufacture methamphetamine.  Furthermore, Defendant's pseudoephedrine purchase records

were admitted into the trial, demonstrating that methamphetamine was produced from her

purchases.  The jury also heard that Defendant confessed her involvement in the conspiracy, and

admitted to purchasing as much as a box of pseudoephedrine a week for seven to eight years

knowing that it was being manufactured into methamphetamine.  As a result, Detective

Anderson's testimony about the risks associated with various methods of manufacturing methamphetamine was not prejudicial to Defendant's substantial rights.

Defendant also argues that when Detective Anderson stated that Defendant's property had been searched a couple of years ago, in regards to another instance, but nothing was found, and when Task Force Officer Donna West mentioned that Defendant was on probation, that they improperly testified as to Defendant's prior criminal acts. Neither statement demonstrates that the admission of such testimony constituted plain error or affected Defendant's substantial rights. Federal Rule of Evidence 404(b) prohibits evidence of a crime "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

In this case, neither of the statements at issue are the type of evidence prohibited by Rule 404(b). Detective Anderson only stated that a search was conducted at Defendant's residence and nothing was found. Similarly, the statement by Task Force Officer West did not reference the crime for which Defendant was on probation, but simply mentioned she was on probation. Given the totality of the evidence presented at the trial, these two statements by the officers did not affect Defendant's substantial rights.

Defendant also argues that the Confrontation Clause was violated when Detective Anderson testified about the substance of a statement made by co-defendant Angela Auton-Miller, who did not testify at trial. Detective Anderson testified that Auton-Miller had described Ward as the leader and that individuals would supply Ward with pseudoephedrine and other items so that he could manufacture methamphetamine. Defendant has not demonstrated plain error and that the admission of the testimony affected her substantial rights.

The Sixth Amendment's Confrontation Clause bars the admission of a testimonial out-of-court statement by a non-testifying co-defendant that inculpated the defendant on trial. *Bruton v.*

*United States,* 391 U.S. 123 (1968). The rule in *Bruton* does not apply where a confession does not inculpate the accused; such statements are inherently non-testimonial. *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004) (discussing *Crawford v. Washington*, 541 U.S. 36 (2004), and defining the inquiry as "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused"). The statement by Auton-Miller cited by Defendant only inculpates Ward; therefore, there was no violation of *Bruton* or the Confrontation Clause in the admission of that statement. *See United States v. Pugh*, 273 F. App'x 449, 453–56 (6th Cir. 2008) (reiterating that hearsay evidence that is non-testimonial is not subject to Confrontation Clause analysis and that even hearsay statements made to investigators may be properly admitted into evidence if offered to show their effect upon the resulting investigation). Furthermore, Ward testified that he manufactured more than two kilograms of methamphetamine and that he had numerous people, including Defendant, obtain the ingredients for him. Because Ward's own testimony about his leadership role in the conspiracy was properly admitted into evidence, Defendant's substantial rights were not violated by the admission of the hearsay statement by Auton-Miller as to the same fact.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's conviction of conspiring to manufacture 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A).